For the reasons assigned, the judgment appealed from is affirmed.

156 So. 182

## STATE v. PUJOL et al.

### No. 32743.

April 23, 1934.

Rehearing Denied July 2, 1934.

Charles A. Byrne and Edward M. Heath, both of New Orleans, for appellants.

Gaston L. Porterie, Atty. Gen., and Eugene Stanley, Dist. Atty., and J. Bernard Cocke and Niels F. Hertz, Asst. Dist. Attys., all of New Orleans, for the State.

ODOM, Justice.

These defendants served as commissioners of election at the Fifteenth voting precinct, Eighth ward, of the city of New Orleans, on November 8, 1932, at which election there were submitted certain proposed amendments to the Constitution of the state.

On September 12, 1933, they were charged in a bill of information, filed by the district attorney, with the crime of making false and fraudulent returns of the votes cast at said election on one of the amendments.

They were tried together, convicted, and each sentenced to pay a fine of $100 and to serve a term of seven months in the parish prison. This appeal is from the conviction and sentence.

The law under which defendants were prosecuted is Act No. 130 of 1916, the general election law of the state. Section 21 of that act prescribes the duties of commissioners, and in so far as its provisions relate to the present case, that section reads as follows:

"Sec. 21, Be it further enacted, etc., That it shall be the duty of the commissioners at each polling place to keep duplicate lists of the persons voting at such polling place, which lists shall be numbered from one to the end; and said lists so to be kept and numbered as aforesaid shall be signed and sworn to as correct by them immediately upon closing the polls and before leaving the place or opening the ballot box. As soon as the votes have been counted and the envelopes sealed, as herein provided, the official tally sheet or sheets shall be signed and sworn to by the commissioners, and the said officers shall make triplicate compiled statements of the number of votes cast for each candidate for National, State, parochial or municipal offices, and the offices for which they were voted, the number of ballots contained in the box, the number of ballots rejected, and the reasons therefor. These compiled statements shall also be sworn to by the said commissioners, the oath to be administered by the deputy sheriff or one of the commissioners, or by any qualified voter. One of the aforesaid tally sheets, together with the poll books and one of the said compiled statements, shall be delivered to the Board of Supervisors of each parish."

This section of the statute relates to the "number of votes cast for each candidate" and makes no mention of votes cast on proposed amendments to the state Constitution. But section 74 of the act provides that: "Whenever there shall appear on the official ballot to be voted for at general elections held under this law, a proposition for an amendment to the state Constitution * * * it shall be the duty of commissioners and clerks of election to tabulate and correctly count and make returns of the votes cast thereon the same as in the case of candidate, and any violation of this section shall be deemed a misdemeanor and punishable by fine of not less than one hundred dollars and not more than five hundred dollars, and imprisonment in the parish prison or police jail for not less than six months nor more than one year."

Defendants were prosecuted under section 74 of the act for making false and fraudulent returns of the votes cast on one of the proposed amendments to the Constitution submitted at the election.

There are eight bills of exception in the record. These bills disclose the alleged errors in the proceedings had in the lower court complained of by defendants. It is unnecessary to consider each of these bills separately, as the points raised by them merge into three major propositions, to wit:

First, that the prosecution was barred by the prescription of six months;

Second, that section 74, Act No. 130 of 1916, under which the prosecution was brought, is unconstitutional; and

Third, that the bill of information filed against the defendants is invalid and should

be quashed because of informalities on its face.

The trial judge overruled each of these pleas.

We shall discuss and dispose of these points in the order named.

### On the Plea of Prescription.

The election was held on November 8, 1932, on which date it is alleged that the crime was committed. More than six months thereafter, or on September 12, 1933, the prosecution was instituted by the filing of the bill of information. Defendants invoke two statutes, or parts of them, in support of their pleas of six months' prescription. The first is the last clause of article 8 of the Code of Criminal Procedure, reading as follows:

"Nor shall any person be prosecuted for any fine or forfeiture unless the prosecution for the same shall be instituted within six months of the time of incurring such fine or forfeiture."

The second is section 23 of the general election law (Act No. 130 of 1916), which reads as follows:

"Sec. 23.. Be it further enacted, etc., That the clerk of the court shall receive the boxes containing the ballots cast at any election, and the other papers herein provided for, sealed as herein above provided, and shall retain them in his care for six months, and as soon as may be thereafter said officer shall cause the ballots to be destroyed without examining them or permitting them to be examined by any person whatsoever (whomsoever), and shall make an entry in the records of his office that they have been so destroyed."

In disposing of the plea made under that part of article 8 of the Code of Criminal Procedure quoted above, it suffices to say that section 74, Act No. 130 of 1916, under which this prosecution is brought, prescribes a penalty of both a fine and imprisonment; and to say further that it is settled by numerous decisions of this court that prosecutions under statutes which provide that imprisonment may be inflicted as part of the punishment for the crime denounced, are barred only by the prescription of twelve months and that the prescriptive period of six months has no application to such cases. State v. Rhodes, 150 La. 1064, 91 So. 512; State v. Courlas, 134 La. 364, 64 So. 141; State v. Richard, 123 La. 179, 48 So. 880; State v. Markham, 15 La. Ann. 498; State v. Jumel, 13 La. Ann. 399.

The prescription of six months is applicable only to such cases as are punishable by fine alone or by imprisonment in default of the payment of the fine. State v. King, 29 La. Ann. 704, and the cases cited supra.

The second point urged by counsel for defendants under the plea of prescription is that all criminal prosecutions under the general election law of 1916 (Act No. 130) are barred or outlawed after six months from the date of the election by section 23 of the act.

Section 23 of the act provides that the clerk of court shall receive the ballot boxes containing the ballots cast at any election and the other papers and documents necessary to be made by the commissioners, and that he shall "retain them in his care for six months, and as soon as may be thereafter said officer shall cause the ballots to be destroyed without examining them or permitting them to be examined by any person whatsoever (whomsoever),

and shall make an entry in the records of his office that they have been so destroyed."

Counsel for defendants contend: First, that the effect, if not the purpose, of this provision of the general election law is to bar all criminal prosecutions under the act after six months from the date of the election; and, second, that after the lapse of six months, unless prosecutions are begun within that time, the ballots and other contents of the ballot boxes have no legal existence for any purpose whatsoever; that even though not actually destroyed, they are, in contemplation of law, nonexistent and have no evidential value and are therefore not admissible in evidence.

This plea, like the first, is without merit. The act under consideration does not in terms say that criminal prosecutions for the violation of its provisions shall be barred by the lapse of six months, nor can section 23 be reasonably construed to mean that the Legislature so intended.

The purpose of the act, as expressed in its title, is to preserve the purity of the ballot and to regulate the manner of holding and conducting elections and to provide "for the punishment of violations of this law." It was not the purpose of the act to establish a prescriptive period for such criminal prosecutions as might be instituted for the violation of its provisions. Such purpose is not expressed or even suggested by the title. Therefore if section 23 of that act be construed to mean that the crimes and offenses mentioned therein are prescribed by the lapse of six months, that section, in so far as it establishes a prescriptive period, would be violative of article 31 of the Constitution of 1913 (the act was adopted in 1916), which provides that "every law enacted by the General Assembly shall embrace but one object, and that shall be expressed in its title."

Aside from this, however, the language of section 23 of the act does not suggest, even remotely, the idea that it was intended that there should be no criminal prosecutions for election frauds after the lapse of six months. It provides that the ballot boxes and their contents shall be securely kept by the clerk for six months. The manifest purpose of that provision is that the contents of the boxes should be kept at hand and available for such purposes as the law contemplates; that they may be used as evidence, either in contested election cases or criminal prosecutions, "to furnish evidence as to the true state of affairs in connection with the election." It was so held in Gonsoulin v. Decuir et al., 121 La. 611, 46 So. 668. This case was cited and the holding to that effect approved in State ex rel. Cassidy v. Baker, Judge, 135 La. 92, 103, 64 So. 993, 997.

In 15 Cyc. 426, under the general heading "Elections," it is stated with reference to statutes prescribing the method of preserving the ballots:

"The object of all such provisions is to secure the safekeeping of the ballots, so that they may be easily identified in case there is need to resort to them as evidence in a judicial inquiry."

Section 23 of the act further provides that as soon after the expiration of the six months' period as may be, the clerk "shall cause the ballots to be destroyed without examining them or permitting them to be examined."

This does not mean that the clerk must, in all events, destroy the ballots at the end of the six months' period. It means that they must be destroyed if not needed as evidence in some judicial inquiry. The reason why the ballots are ordered to be destroyed at the end of six months is that they are no longer needed, but "that reason fails entirely where they are needed as evidence in a criminal prosecution for a fraud committed in the election." State ex rel. Cassidy v. Baker, Judge, supra.

But counsel for defendants go further and argue that even if the crime itself is not prescribed by the lapse of six months, the ballots themselves are, after that time, dead things even though not destroyed; that they have no legal existence for any purpose, no evidential value. The reason for this, they say, is that the act says that they shall be destroyed; the effect of this being that they are legally, though not actually, destroyed.

■ What we said above about the ballots is pertinent to this point. The ballots of the electors are the primary and original, and therefore the best, evidence of the results of an election. They witness the intent and will of the voters. As against them, when properly preserved, all other evidence of the results of an election must yield. It is therefore of utmost importance that they be kept in existence for evidence in all judicial inquiries touching the results of elections as well as the regularity of the returns made by the commissioners of election. Without the ballots, it would be difficult, if not impossible, to prove some of the crimes denounced by the act.

■ For the protection of the political rights and privileges of the citizens of the state, the Legislature has ordained that elec-

tions be honestly conducted and that those who are commissioned to hold them shall make accurate and honest returns of the results. For every transgression of the rules laid down for holding and conducting elections the law exacts a penalty. But the penalty cannot be inflicted without evidence of the transgression. The ballots being the primary and best evidence of the results, their production and use are almost, if not quite, indispensable in the prosecution of commissioners for making false and fraudulent returns. This being true, it is inconceivable that the lawmakers intended to include in the election law a provision to utterly destroy the state's primary evidence and thereby strike down the very prosecutions authorized by the act. Such a construction of section 23 of the act is not only unreasonable; it is impossible. The state did not intend thus to disarm itself and paralyze the machinery set up to protect the political rights of its citizens, which can be done only by preserving the purity of the ballot.

So long as the ballots are in existence, their value as evidence is not affected or impaired by the lapse of time or the failure of the clerk to destroy them. The court may at any time order them brought forth that they may speak the evidence. The following cases support this view, and, so far as we know, there are none against it: State ex rel. Cassidy v. Baker, Judge (Louisiana) supra; People v. Newsome, 291 Ill. 11, 125 N. E. 735; Commonwealth v. Ryan, 157 Mass. 403, 32 N. E. 349.

### Constitutionality of the Statute.

■■ The defendants, in limine, moved to quash the indictment on the ground that sec-

tion 74, Act No. 130 of 1916, under which it was brought, is unconstitutional in that its object or purpose is not expressed in its title (article 31, Constitution 1913). Specifically, counsel say in their brief that "the matters included in section 74 are foreign and not germane to the object expressed in the title," and that "the title of the act does not convey an adequate idea of the character of the legislation covered by it." Finally they argue that the provisions of the entire act are so drastic, unreasonable, and unjust that it cannot be enforced, even if constitutional, and in this connection they say that the courts are allowed no latitude or discretion in its enforcement because, under its precise letter, a commissioner or clerk of election is guilty if the testimony discloses the slightest error in the count, even though the error was unintentionally made.

The main attack made on section 74 of the act is that there is nothing in the title thereof to suggest or indicate that the Legislature intended to adopt regulations for tabulating and making the returns of the votes cast on proposed constitutional amendments. It is pointed out that Act No. 152 of 1898, the title of which is precisely the same as that of Act No. 130 of 1916, makes no mention in its body of proposed constitutional amendments and prescribes no rules for the counting and tabulating of the votes cast on them, and further that the Legislature of 1914, by separate act, No. 243, for the first time made provisions for making returns of the votes cast on constitutional amendments. The argument is that prior to 1916 there were two separate acts, or separate legislation, regulating the making of returns of votes cast at general elections, one regulating the making of returns of the votes cast for candidates and the other relating to votes cast on proposed constitutional amendments, and that these acts therefore had separate and different objects or purposes; and that the Legislature of 1916, by adopting Act No. 130, merged these two objects into one act without adopting a title indicative of that purpose.

We find no merit in this contention. It takes no labor of the mind to discover the single and sole object of Act No. 130 of 1916. It is "to preserve the purity of the ballot," by "regulating the manner of holding and conducting elections."

This is the object expressed in the title. The act has no other. The body of the act sets out rules and regulations for conducting elections, for counting, tabulating, and making returns of the votes cast, and prescribes penalties for violating these rules. All this is necessary for the preservation of the "purity of the ballot." Whatever is necessary to be done by commissioners and clerks of elections in order to preserve the purity of the ballot is germane to and covered by the title of the act, which expresses that object.

The act of 1916 has to do with all general elections, and proposed amendments to the Constitution are submitted at such elections. So that if the title of the act is broad enough to include the purpose of regulating the manner in which election officers shall count and make returns of the votes cast for candidates, it is broad enough to include the purpose of regulating the counting of the votes and the making of returns of the votes cast on constitutional amendments.

The act of 1916 is not open to the objection that it has a dual purpose, even though prior to the date of its adoption there were separate acts regulating the making of returns at elections. Act No. 152 of 1898 and Act No. 243 of 1914 have the same general purpose, the preservation of the purity of the ballot. The act of 1898 did not mention proposed constitutional amendments, but its title was broad enough to include regulations for making returns of the votes cast on them. The failure to mention constitutional amendments in the act of 1898 was probably due to an oversight, which was not discovered until the case of State v. Palanque, 133 La. 36, 62 So. 224, came before the court in 1913. The Legislature of 1914 cured the defect by adopting Act No. 243. In 1916 the entire subject-matter was included in one act. There is no valid reason why this could not be done.

Another attack made on the statute is that it is "so harsh, so drastic, so unfair, so unjust, so unreasonable and so impossible of fulfillment that citizens of the state will be reluctant to serve as commissioners and clerks at the polls, because an honest mistake of one or two or three votes in making the election returns will constitute a violation of law, and clerks and commissioners will be subject to prosecution and a penalty of fine and imprisonment," and that said act "deprives the trial judge of any discretion in determining the guilt or innocence of a defendant, and where a variance of one vote between the official count and a recount of the votes has been established, he must construe the variance as a violation of the section the same as a variance of a much greater number."

The statute is drastic, but it is not unfair, unjust, or unreasonable, nor do its provisions deprive the trial judge of "any discretion in determining the guilt or innocence of a defendant" where there is a slight variance between the returns and a recount. This statute, like all others, should be given a reasonable interpretation. The rule of reason and common sense should be applied in the interpretation of all statutes. Applying this rule, we know that it was never intended that the commissioners and clerks of election should be penalized for mere mistakes or "honest errors." The penalty is incurred by such officers only where there is a willful violation, a willful neglect, or a willful disregard of the duties assumed.

The judge before whom these defendants were tried, in passing on the motion to quash on this ground, announced the correct rule when he said: "There can be no righteous and legal conviction in this prosecution, if it appears from the evidence, for example, that the violation of the statute was due to some honest mistake," citing State v. Bolden, 107 La. 116, 31 So. 393, 394, 90 Am. St. Rep. 280, where it was held that although Act No. 44 of 1890 made it a penal offense to shoot with intent to kill, it was manifestly not intended to make it a crime to shoot with intent to kill if the shooting was done in self-defense.

In the Bolden Case, the court said: "The reason of the law is to be consulted, and not exclusively the cold letter," and approved the following quotation from United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence."

Counsel raised other objections to the statute, but as they are of no special importance and without merit, we shall not discuss them.

Finally, we consider the motion to quash the bill of information on the alleged ground of "informalities on its face."

Counsel set out seventeen alleged defects in the bill. Practically all these relate to matters which we have already disposed of.

■■ There are only three additional points raised which deserve mention. The first is that the information is defective in that the commissioners alone are indicted, whereas section 74 of the act makes it the duty of the "commissioners and clerks of election" to tabulate and make returns of the votes cast. Counsel contend that the clerks of election should have been prosecuted along with the commissioners.

We express no view as to whether clerks of election are subject to prosecution under this act. But conceding that they are, the fact that they were not prosecuted along with the commissioners furnishes no reason why the indictment against the commissioners should be quashed or why they should not be prosecuted separately from the clerks. The rule is that "the several participants in a crime may be proceeded against jointly or severally at the election of the prosecuting power." Bishop's New Criminal Procedure (2d Ed.) vol. 2, § 1325, par. 2.

The same rule is stated in different language in 15 Cyc. 459, as follows:

"But where the offense arises wholly from any joint act which in itself is criminal, without regard to any particular personal defendant, defendants may be charged either jointly or severally."

■ The second point is that sections 44 and 74 are repugnant in their provisions with reference to punishments, section 44 fixing a penalty of fine not exceeding $1,000 or imprisonment not exceeding one year for the violation of any of the provisions of the act, and section 74 fixing a penalty of fine not less than one hundred nor more than five hundred dollars and imprisonment in the parish jail not less than six months nor more than twelve months for the crime denounced by that particular section.

The argument of counsel is that in view of these conflicting provisions as to penalties, "the court is powerless * * * to determine which penalty the legislature intended to apply to a violation of the provisions of section 74."

The Legislature necessarily intended that the penalty prescribed in section 74 be inflicted as punishment for the crime denounced by that section, for that section says "any violation of this section shall be deemed a misdemeanor and punishable by fine of not less than one hundred dollars and not more than five hundred dollars, and imprisonment in the parish prison or police jail for not less than six months nor more than one year."

Clearly the penalties mentioned elsewhere in the act do not apply to cases arising under section 74, which prescribes its own penalty.

We do not understand counsel to argue that the statute is unconstitutional on account of these alleged conflicts, but that it is confusing and misleading. We do not think it is misleading.

■ The third point is that the indictment is drawn "in accordance with the provisions of sections 21 and 18 of Act No. 130 of 1916,"

which sections "apply and refer only to the tally sheets showing the number of votes cast for each candidate \* \* \* and only to the compiled statements or number of votes cast for each candidate and do not apply to returns required to be made on constitutional amendments as provided in section 74."

The reason why the indictment appears to have been drawn under sections 21 and 18 is that they specifically prescribe the method of counting and tabulating the votes cast and the making of returns, whereas section 74 provides only that the commissioners and clerks tabulate and correctly count and make returns of the votes cast on proposed amendments "the same as in the case of candidate." Therefore it suffices in drawing an indictment under section 74 to embody therein the specifications contained in sections 21 and 18.

For the reasons assigned the judgment and sentence appealed from are affirmed.

St. PAUL, J., absent.

O'NIELL, C. J., absent.