**UNITED STATES of America**

v.

**James S. KELLER.**

Crim. No. 12702.

United States District Court
M. D. Pennsylvania.

Jan. 9, 1958.

Robert J. Hourigan, U. S. Atty., Scranton, Pa., for plaintiff.

Edwin Utan, Morey M. Myers, Scranton, Pa., for defendant.

MURPHY, Chief Judge.

Defendant convicted of violating 18 U. S.C.A. § 1463,[1] i. e., that he "did knowingly deposit for mailing a postal card * * * upon which language of an indecent character was written", moves for judgment of acquittal, F.R.Crim.P. Rule 29(a), and in arrest of judgment, Id. Rule 34, 18 U.S.C.A.

Defendant, a married man, mailed from Pennsylvania to an unmarried fe-

---

1. § 1463 in pertinent part provides: "* * * all postal cards upon which, any delineations, epithets, terms, or language of an indecent, lewd, lascivious, or obscene character are written * * * are nonmailable matter, and shall not be conveyed in the mails * *.

"Whoever knowingly deposits for mailing * * * anything declared by this section to be nonmailable matter * * * shall be fined * * * or imprisoned * * * or both. June 25, 1948, c. 645, 62 Stat. 769."

male in Kentucky nineteen postal cards purportedly describing their previous intimate sexual relationship and broken friendship. Defendant was indicted in nineteen counts, one as to each postal card containing a verbatim account of the particular message. Defendant was without counsel. Since there were constitutional questions involved, two counsel instead of one were named to represent him. Upon pre-trial motion, Rule 12(b), eight counts were dismissed, not because of their innocuous character, but because the statements made therein were embraced within the prohibitions of 18 U.S.C.A. § 1718 as to language of a libelous, scurrilous, defamatory character.[2] Upon trial to a jury defendant did not testify or offer any testimony in his own behalf. The jury found him not guilty as to four counts;[3] guilty as to the remaining seven counts.

The position of his counsel then and now was: (1) that the indictment does not state facts sufficient to constitute an offense against the United States; (2) that the portion of the statute under which defendant was indicted is unconstitutional; (3) that the alleged offense set forth in the various counts is not within the meaning of the statute.

While defense counsel did not spell out their claims of unconstitutionality, we assume from their briefs and arguments that they challenged the power of Congress to enact such a statute, but see Art. I, § 8, cl. 7, of the United States Constitution, and see Roth v. United States, 1957, 354 U.S. 476, at page 493, 77 S.Ct. 1304, 1 L.Ed.2d 1498; Public Clearing House v. Coyne, 1904, 194 U.S. 497, 506–508, 24 S.Ct. 789, 48 L.Ed. 1092; that the statute in question interferes with freedom of expression as guaranteed by the First Amendment, but see Roth v. United States, supra, 354 U.S. at pages 483–485, 77 S.Ct. 1308–1309; that the statute does not provide a reasonably ascertainable standard of guilt and therefore violates the due process clause of the Fifth Amendment, but see Roth v. United States, supra, 354 U.S. at pages 491, 492, 77 S.Ct. 1312, 1313.[4]

**2.** § 1718 provides: " * * * any delineation, epithet, term, or language of libelous, scurrilous, defamatory, or threatening character, or calculated by the terms or manner or style of display and obviously intended to reflect injuriously upon the character or conduct of another * * *." See 41 Am.Jur. Post Office, § 119; McKnight v. United States, 9 Cir., 1935, 78 F.2d 931.

**3.** See and cf. Note 2, supra.

**4.** While the statute interpreted in Roth v. United States, supra, was 18 U.S.C.A. § 1461, "Mailing obscene or crime-inciting matter", the ratio decidendi is applicable to § 1463. See and cf. Botsford v. United States, 6 Cir., 1914, 215 F. 510; United States v. Smith, C.C.D.Ky.1882, 11 F. 663; Warren v. United States, 8 Cir., 1910, 183 F. 718, at pages 720–721, 33 L.R.A.,N.S., 800. See In re Rapier, 1892, 143 U.S. 110, at page 133, 12 S.Ct. 374, 36 L.Ed. 93, referring to Ex parte Jackson, 96 U.S. 727, at page 736, 24 L.Ed. 877, "In excluding various articles from the mails, the object of congress is not to interfere with the freedom of the press or with any other rights of the people, but to refuse the facilities for the distribution of matter deemed injurious by congress to the public morals."—As to libel, see § 1718 and Beauharnais v. Illinois, 1952, 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919, and see cases cited in Roth v. United States, supra, 354 U.S. at page 481, 77 S.Ct. 1306; e. g.: " * * * the primary requirements of decency may be enforced against obscene publications." Near v. Minnesota, 1931, 283 U.S. 697, at page 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357. " * * * the right of free speech is not absolute at all times and under all circumstances. There are certain well defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. 'Resort to epithets or

**942**

■ Since the primary requirements of decency may be enforced, and obscenity and, we add, indecency are not within the area of constitutionally protected freedom of expression, defendant's objection, based upon the First Amendment, is without merit.

■ As to the Fifth Amendment, see Roth v. United States, supra, 354 U.S. at page 491, 77 S.Ct. at page 1312 quoting from Rosen v. United States, 1896, 161 U.S. 29, at page 42, 16 S.Ct. 434, 40 L. Ed. 606, "Everyone who uses the mails of the United States for carrying papers or publications must take notice of what, in this enlightened age, is meant by decency, purity, and chastity in social life, and what must be deemed obscene, lewd and lascivious."

And again, see Roth v. United States, Id., "Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ' * * * The Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *' United States v. Petrillo, 332 U.S. 1, 7–8, 67 S. Ct. 1538, 1542, 91 L.Ed. 1877. These words, applied according to the proper standards for judging obscenity * * * give adequate warning of the conduct proscribed and mark ' * * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define

personal abuse is *not in any proper sense communication of information or opinion safeguarded by the Constitution,* and its punishment as a criminal act would raise no question under that instrument.' Cantwell v. Connecticut, 310 U.S. 296, 309–310, 60 S.Ct. 900, 906, 84 L.Ed. 1213." Chaplinsky v. New Hampshire, 1942, 315 U.S. 568, at pages 571, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031. See and cf. Hannegan v. Esquire Inc., 1946, 327 U.S. 146, at pages 155, 156, 66 S.Ct. 456, 90 L.Ed. 586, "Under our system of government there is an *accommodation for the widest varieties of tastes and ideas. * * *"* Id. 327 U.S. at page 157, 66 S.Ct. at page 462, "The validity of the obscenity laws is recognition that *the mails may not be used to satisfy all tastes, no matter how perverted.*" Id. 327 U.S. at page 158, 66 S.Ct. at page 462. See Mr. Justice Frankfurter, concurring 327 U.S. at page 159, 66 S.Ct. at page 463 " * * * only that nonmailable matter as defined by * * * the Criminal Code is excluded * * *." "We do *not accede to appellee's suggestion that the constitutional protection * * * applies only to the exposition of ideas. The line between the informing and the entertaining is too elusive* for the protection of that basic right. Everyone is familiar with instances of propaganda through fiction. What is one man's amusement, teaches another's doctrine. *Though we can see nothing of any pos-*

*sible value to society* in these magazines, they are as much entitled to the protection of free speech as the best of literature. * * *" Winters v. New York, 1948, 333 U.S. 507, at page 510, 68 S.Ct. 665, 667, 92 L.Ed. 840; and see Joseph Burstyn Inc. v. Wilson, 1952, 343 U.S. 495, at page 501, 72 S.Ct. 777, 96 L.Ed. 1098; Times Film Corp. v. City of Chicago, 7 Cir., 1957, 244 F.2d 432, at page 434. See Mr. Justice Douglas in "The Rights of the People" (1958) at p. 61, "Winters v. New York * * * [333 U.S. at page] 510 [68 S.Ct. 667] said that *literature dealing with lust and crime was entitled to constitutional protection. There is no reason why sex literature should be less favorably treated.*" But see and cf. Winters v. New York supra, 333 U.S. at page 510, 68 S.Ct. at page 668, *"They are equally subject to control if they are lewd, indecent, obscene or profane."*

"All ideas having *even the slightest redeeming social importance*—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties, unless excludable because they encroach upon the limited area of more important interests. But implicit in the history of the First Amendment is the rejection of *obscenity* as *utterly without redeeming social importance. * * We hold that obscenity is not within the area of constitutionally protected speech or press."* (Emphasis supplied.) Roth

a criminal offense * * *.' Id. 332 U.S. at page 7, 67 S.Ct. at page 1542."

As to the proper standard for judging obscenity, see Roth v. United States, supra, 354 U.S. at page 489, 77 S.Ct. at page 1311. An approved test is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." As to the latter, sex and obscenity are not synonymous and the portrayal of sex per se is not sufficient to deny constitutional protection. Roth v. United States, supra, 354 U.S. at page 487, 77 S.Ct. at page 1310; United States v. Dennett, 2 Cir., 1930, 39 F.2d 564, 76 A.L.R. 1092; Consumers Union v. Walker, 1944, 79 U.S.App.D.C. 229, 145 F.2d 33, at page 35. Material is obscene when it "deals with sex in a manner appealing to prurient interest." Roth v. United States, supra, 354 U.S. at page 487, 77 S.Ct. at page 1310; and see Butler v. Michigan, 1957, 352 U.S. 380, 77 S.Ct. 524, 1 L.Ed.2d 412.

In Roth the trial court charged, "The words 'obscene, lewd and lascivious' as used in the law, signify that form of immorality which has relation to sexual impurity and has a tendency to excite lustful thoughts." In Alberts (Alberts v. California, heard and simultaneously disposed of in Roth v. United States) the test was "whether the material has 'a substantial tendency to deprave or corrupt its readers by inciting lascivious thoughts or arousing lustful desires.'"

See Roth v. United States, supra, 354 U.S. at page 486, 77 S.Ct. at page 1310. In holding that both courts used the proper definition of obscenity, Mr. Justice Brennan, speaking for a majority of the court, stated, "We perceive no significant difference between the meaning of obscenity developed in the case law and the definition of the A.L.I., Model Penal Code, § 207.10(2) (Tent.Draft No. 6, 1957), viz: ' * * * A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. * * *' "[5] See 354 U.S. at page 487, note 20, 77 S.Ct. at page 1310. Further, "in light of our holding that obscenity is not protected speech, * * * 'it is unnecessary * * * to consider the issues behind the phrase 'clear and present danger.' " Roth v. United States, supra, 354 U.S. at page 486, 77 S.Ct. at page 1310; see Schenck v. United States, 1919, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470; Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137.

We are here concerned with a more or less "private" mailing, (op. cit. supra, 106 U. of Pa.L.Rev. at 237) in which the writer venting his spleen in an attempt to harm publicly declares (see United States v. Pratt, D.C.E.D.Mich., 1875, 27 Fed.Cas.No. 16,082, p. 611, at pp. 612–613)[6] that they had engaged in

---

v. United States, supra, 354 U.S. at pages 484, 485, 77 S.Ct. at page 1309.

5. But see Obscenity in the Mails: A Comment on Some Problems of Federal Censorship, by James C. N. Paul, and Murray L. Swartz, 106 U. of Pa.L.Rev. 214 at 234; and see Id. 240, "The ALI 'test' * * * is not just a reformation of old standards but rather a new test with a different emphasis." And see Criminal Obscenity Law: Portents from Recent Supreme Court Decisions and Proposals of the American Law Institute in the Model Penal Code, by Schwartz, 29 Pa.Bar Quarterly, 8 at 11.

6. Speaking of postal cards, " * * * the temptation afforded by the fact that they may be read by anybody has subjected them to great abuse * * * Congress

evidently designed by this section to prohibit this abuse, and to punish the sending of all indecent and scurrilous matter through the mails, so far as it had power to do this without violating the sanctity of private correspondence * * * the offence of sending scurrilous postal cards is more purely personal, more exasperating to the receiver, and more likely to lead to bad blood and to breaches of the peace than any other specified in the act. * * * any form of expression which imputes to a person any indecent or scurrilous characteristic or quality is within the statute." But see Verner v. United States, 9 Cir., 1950, 183 F.2d 184, an opinion by Biggs, C. J., as to the effect on the mind of the recipient and the motive of the sender.

adulterous relations, speaks of poignant memories, of indecent exposures, of unnatural sex gratifications. While defendant's objective may have been to embarrass, intimidate, and to prevent prosecution, the main thrust of each message, although jejune in content, was to prurient interest, indicated a shameful interest in sex and went substantially beyond customary limits of candor in description.[7] At all events they presented a jury question under appropriate instructions. The jury by its discriminating verdict found that as to seven counts the prescribed tests of guilt were met; that proscribed material was used in a manner in violation of the statute. See and cf. United States v. Limehouse, 1932, 285 U.S. 424, 52 S.Ct. 412, 76 L. Ed. 843, and see Note 76 L.Ed. 845, at pages 848, 849, 851; Sunshine Book Co. v. Summerfield, D.C.D.C.1955, 128 F.Supp. 564, at page 568, affirmed D.C. Cir., 249 F.2d 114; One Inc. v. Olesen, 9 Cir., 1957, 241 F.2d 772; United States v. Hornick, 3 Cir., 1956, 229 F.2d 120, at page 122; United States v. Smith, supra; 41 Am.Jur., Post Office, §§ 116, 117; and see United States v. Roth, 2 Cir., 1956, 237 F.2d 796, at page 799 as to "* * * a feeling of disgust and revulsion".

Defendant's motions will be denied.

7. For present purposes, the pertinent parts of each count were: 1: "* * * The first two and a half years of our 'shacking up' was perfect. When you saw you couldn't get me to violate the 'Mann Act' you started out to give me the business * * * You had the sex problem * * *." 5: "* * * I'll bet Mrs. —— doesn't permit you to run around the house in front of Mike in your 'Special Robe' (Naked) as you did in 'Grand Central Station' and this house * * *. I am not forgetting I am in the mire so much as you are in the muck—* * *." 6: "* * * Was it right * * * to talk disparagingly of * * * mother and grandmother * * * to accuse a * * * (clergyman) of using my son for unnatural sex gratification knowing I had no foundation for the accusation? * * *" 10: "* * * You know I shacked yup (sic) with you for five and a half years—I know you very well * * *." 13: "* * * we'll both be lucky if Mrs. Keller doesn't get warrants for both of us for using her home for adulterous purposes * * *." 14:"* * * I had to move out of the bedroom we shared during the * * * weeks you were here. The memories were too poignant * * *." 19: "* * * My interview * * * will determine wheather (sic) * * * Mrs. Keller gets warrants for us both for adultry (sic) * * * You are I are into a nasty sordid mess * * * 'Pretty Boy'."