**UNITED STATES of America**
v.
**James S. KELLER, Appellant.**
**No. 12565.**

United States Court of Appeals.
Third Circuit.

Argued July 7, 1958.
Decided Sept. 18, 1958.

Morey M. Myers, Scranton, Pa., for appellant.

William D. Morgan, Asst. U. S. Atty., Scranton, Pa. (Daniel H. Jenkins, U. S. Atty., Scranton, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and GOODRICH, Circuit Judges.

BIGGS, Chief Judge.

The defendant-appellant, Keller, was convicted on seven counts of an indictment charging him with violations of Section 1463, Title 18 U.S.C.,[1] in that he

---

1. Section 1463 in pertinent part provides: "* * * [A]ll postal cards, upon which

any delineations, epithets, terms, or language of an indecent, lewd, lascivious, or

deposited for mailing seven postal cards "upon which language of an indecent character was written * * *", viz., "[Count 1] * * * The first two and a half years of our 'shacking-up' was perfect. When you saw you couldn't get me to violate the 'Mann Act' you started out to give me the business * * * [Y]ou had the sex problem * * *"; "[Count 5] * * * I'll bet Mrs. ——— doesn't permit you to run around the house in front of Mike in your 'Special Robe' (Naked) as you did in 'Grand Central Station' and this house * * * I am not forgetting I am in the mire so much as you are in the muck * * *"; "[Count 6] * * * Questions for [you] to ask [yourself] * * *: Was it right for me to talk disparagingly of * * * mother and grandmother * * * to accuse a [clergyman] of using my son for unnatural sex gratification knowing I had no foundation for the accusation? * * *"; "[Count 10] * * * You know I shacked-yup (*sic*) with you for five and a half years—I know you very well * * *"; "[Count 13] * * * We will both be lucky if Mrs. Keller doesn't get warrants for both of us for using her home for adulterous purposes * * *"; "[Count 14] * * * I had to move out of the bedroom we shared during the * * * weeks you were here. The memories were too poignant * * *"; "[Count 19] * * * [My interview] will determin (*sic*) wheather

(*sic*) * * * Mrs. Keller gets warrants for us both for adultry (*sic*) * * * You and I are into a nasty sordid mess. * * *"

The jury found the defendant guilty on each of these seven counts. Motions for a judgment of acquittal and in arrest of judgment, Rules 29(a) and 34, Fed.R. Crim.Proc., Title 18 U.S.C., were denied. 158 F.Supp. 940. The appeal followed.

The defendant contends: (1) That Section 1463, Title 18 U.S.C., which punishes the mailing of postal cards containing "language of an indecent * * * character" is unconstitutional as abolishing freedom of speech under the First Amendment and as too vague in terms to meet the requirements of the Fifth Amendment; and (2) that the acts described in the seven counts and detailed above are not within the purview of Section 1463.

■ The issue raised by the defendant that the statute is an abridgement of freedom of speech guaranteed by the First Amendment need not detain us long. Roth v. United States, 1957, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498.[2] It is clear in view of the Roth decision that if the language used by the defendant was of an "indecent, lewd, lascivious, or obscene character" it does not fall within the protection of the First Amendment.

■■ As to the Fifth Amendment, the defendant asserts that the phrase

obscene character are written * * * are nonmailable matter, and shall not be conveyed in the mails * * *.

"Whoever knowingly deposits for mailing * * * anything declared by this section to be nonmailable matter * * * shall be fined * * * or imprisoned * * * or both."

2. The Roth opinion settled two appeals, viz., Roth v. United States (No. 582) and Alberts v. California (No. 61).

Defendant Roth was charged with mailing obscene circulars and advertising, and an obscene book, in violation of Section 1461, Title 18 U.S.C., and was convicted. Defendant Alberts was charged with and convicted of lewdly keeping for sale obscene and indecent books, and with writing, composing and publishing an obscene advertisement of them, misde-

meanors in violation of state law, Cal. Pen.Code, § 311 (West 1955). The opinion in Roth states that the principal questions in the two appeals were, respectively, whether the First Amendment was violated by the federal statute and whether the pertinent section of the California Penal Code violated the freedom of speech as that guarantee is incorporated into the Due Process Clause of the Fourteenth Amendment. 354 U.S. 476, 479-480, 77 S.Ct. 1304. A second issue was whether these statutes violated due process of law because they were too vague to support conviction. In deciding both appeals, the Court held that neither the First Amendment's guarantee of free speech nor the requirements of due process under the Fifth and Fourteenth Amendments were violated.

"language of an indecent character", used in the counts of the indictment, is too vague to apprise him of the charges against him. In the Roth case the Supreme Court had before it Section 1461, Title 18 U.S.C., which makes punishable the mailing of material that is "obscene, lewd, lascivious, or filthy * * * or * * * of an indecent character * * *," and Section 311 of the California Penal Code which describes as a misdemeanor wilful and lewd advertising and distribution of any "obscene or indecent" matter. The defendant in the case at bar was not charged with using language of an "obscene" character. But in view of the Roth decision we cannot hold that the term "language of an indecent * * * character" is too vague or indefinite to have informed the defendant of the charges against him. Congress did not intend separate classifications of nonmailable matter for each of the adjectives "indecent", "lewd", "lascivious", and "obscene" in Sections 1461 and 1463. Moreover, the Supreme Court in Roth addressed itself to a single criterion for objectionable matter. While the Court spoke of "judging obscenity", the essence of what was said does not permit a less stringent test for judging "indecent" material. "It is * * * vital that the standards for judging obscenity safeguard the protection of freedom of speech and press for material which does not treat sex in a manner appealing to prurient interest." 354 U.S. at page 488, 77 S.Ct. at page 1311. Nor can we conclude that Congress intended that the standard for judging nonmailable matter should differ from Section 1461 to Section 1463. If we are correct in our ruling in this respect the issue raised by the defendant as to the statute's vagueness under the Fifth Amendment must fall for the Roth decision holds unequivocally that the terms of Section

1461 are not so vague as to fall within the prohibition of the Amendment. Cf. United States v. L. Cohen Grocery Co., 1921, 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516. We believe, therefore, that the language of Section 1461 and Section 1463 was intended by Congress to be substantially equivalent and that language of an "indecent" character must be equated with language of an "obscene" character.

Our view is confirmed by rules of statutory construction. Applying the doctrine of *ejusdem generis,* where general words of description which follow more specific terms are restricted in meaning by those which are specific, the word "indecent" in Section 1461[3] is limited in ambit to the area covered by "obscene, lewd, lascivious." Applying the doctrine of *noscitur a sociis* to Section 1463, the word "indecent", which precedes "lewd, lascivious, or obscene", takes its sense and meaning from the associated words. Accordingly, the description "indecent" is limited in both sections and the area covered by these sections is identical. Concededly, by dictionary definition, the term "indecent" has a broader range, but in the context of Section 1463, its meaning is restricted to the sense imparted by the adjectives "lewd", "lascivious" and "obscene".

The fact that the language which is the subject of the indictment was written on postal cards instead of being enclosed in an envelope is immaterial. The test imposed by the statute is not dependent on enclosure. The words of Section 1463 equated to those of Section 1461 do not permit such a distinction.

We come therefore to the substantial question presented: Whether the language used on the postal cards[4] and quoted above states offenses under Section 1463. The test set out in the Roth case is "[W]hether to the average

3. See wording of Section 1461, 259 F.2d 57, supra and compare with that of Section 1463, note 1 supra.

4. A reading of all the postal cards in evidence shows, as correctly stated by the court below, that the defendant was venting his spleen against the addressee. We are not here concerned with the subjective state of the defendant's mind but with what he wrote and mailed.

person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 U.S. at page 489, 77 S.Ct. at page 1311. It is also made clear that sex and obscenity are not synonymous and the depiction or portrayal of sex per se is not sufficient to deny the protection of the guarantees of the First Amendment. The Supreme Court in the Roth case declared that material is obscene when it "deals with sex in a manner appealing to prurient interest." 354 U.S. at page 487, 77 S.Ct. at page 1310. The term "prurient" is defined as "Itching; longing; uneasy with desire or longing. * * *" Webster's New International Dictionary (2d ed. 1948).

From the language used by the defendant and complained of in count 1 we learn that the defendant and the addressee, a woman not his wife, lived in a pseudo-conjugal relationship for two and a half years and that they engaged in sexual intercourse. It can be inferred from the employment of the phrases "Mann Act" and "shacking-up" that the relationship was meritricious. It is obvious, from the words themselves, that the defendant intended to embarrass the addressee. We cannot find that the language used, applying the test of the Roth case, is "obscene" or "indecent". We cannot say that the language appealed to pruriency.

■ As to the language complained of in count 5 we think it falls far short of the standard of Roth. We hold that writing that a female runs around a dwelling house naked does not present an appeal to prurient interest under contemporary community standards and does not fall within the purview of Section 1463. If it were otherwise the phrase "naked woman" or a depiction of one would have to be deemed to be inflammatory of itself. The appeal to pruriency must be to the "average" person. That some may find reference to nudity a whet to salacity is not enough to render the writer criminally liable. Nor is it enough that

the words serve to remind the average person of objects which might excite a prurient interest if seen in another context. The words charged as criminal do not meet the test of Roth.

■ In respect to count 6 the only language involved which could invoke the sanction of the statute is that relating to sexual perversion in connection with the addressee's son and, it is asserted, a clergyman. While description or discussion of sexual perversion in more colored language could possibly be objectionable, the mention of sexual perversion in and of itself cannot in our judgment be deemed to be obscene by contemporary community standards. If mention of homosexuality is indecent the problems presented by perversion could not even be discussed.

The language of count 10 is less pungent than that of count 1.

In respect to count 13 the critical phrase is "using * * * [a] home for adulterous purposes." This language in our opinion is insufficient to sustain the indictment.

The language complained of in count 14 refers to memories of sharing a bedroom. But is does not appear from this postal card that this was a reference to an illicit relationship. Cf. Sinclair v. United States, 1950, 338 U.S. 908, 70 S.Ct. 342, 94 L.Ed. 559, reversing per curiam, 3 Cir., 1949, 174 F.2d 933. Certainly if the reference is to sexual intercourse it is cloaked. Furthermore, the words used possess a negligible appeal to pruriency. We think they do not meet the test of the statute.

The words complained of in count 19 are insufficient to sustain an indictment under Section 1463.

■■ We do not think it is the mission of Section 1461 and Section 1463 to punish all references to sex which have no apparent socially redemptive value. That is not the test. Some of the words complained of in the seven counts are vulgar and perhaps repugnant to one of average sensibilities, but a conviction

under Section 1463 cannot be sustained on such grounds.[5]

In concluding that the defendant is not guilty of an offense under Section 1463 we have not lost sight of the fact that all the inferences that can be reasonably drawn from the evidence must be taken in favor of the United States. But the test of the sufficiency of the proof required to meet the test of the statute is for the court in the first instance. We point out also that the test of contemporary community standards is not met simply because a jury finds material submitted to it to be indecent or obscene. While the members of a jury live contemporaneously in a community and are a part of it, their judgment as to material being indecent or obscene is not equated as a matter of law to the contemporary community standard. The court must still determine whether the facts proved are sufficient under the statute. In our opinion the case should not have been sent to the jury.

The judgments of conviction will be reversed and the case will be remanded with the direction to enter a judgment of acquittal.

---

5. Cf. the provisions of Section 1718, Title 18 U.S.C.; Swearingen v. United States, 1896, 161 U.S. 446, 451, 16 S.Ct. 562, 40 L.Ed. 765.