MONROE, J.
Defendants were charged by indictment with having, as commissioners of election, made false returns of the result of the votes cast upon a proposed amendment to the Constitution, which was submitted to the people at an election held on November 5, 1912, and, their demurrer to the indictment, on the ground that it charges no offense known to the law, having been sustained, the state has brought the matter before this court by' appeal.
The prosecution is thought to be authorized by various provisions of law, constitutional and statutory, taken together; the argument on behalf of the state being, in effect, as follows:
Article 321 of the Constitution makes provision for the time and manner in which proposed amendments to that instrument shall be submitted to the people, and declares that, if a majority of those voting shall approve and ratify them, they shall become part of the Constitution.
Act No. 12 of 1912 (Ex. Sess.) proposes an amendment to the Constitution and prescribes the form to be used.
Act 152 of 1898, being the General Election Law, provides:
“Sec. 30. Be it further enacted, etc., that the Secretary of State shall, at the expense of the state, provide envelopes, blank statements, blank affidavits and all necessary blank forms for use by the commissioners at each polling place, in the conduct of the election, count and canvass and return of the vote cast at each election, and upon any proposed amendment to the Constitution or other question submitted to the voters. Said blank forms shall be sent to the boards of supervisors, and shall be used in ascertaining the result of such election, and such result shall he ascertained in the manner hereinafter provided. [Italics by the court.]
“All tally sheets and forms for compiled statements herein provided for, shall be ruled at the bottom, by at least six lines, and partially blank, and partially printed in, as follows :
(Blank) (Printed in) (Blank) (Printed in). John Doe, Commissioner for Democratic party. .........Commissioner for.............party .........Commissioner for.............party (Printed in) (Blank) (Printed in).
to and before
“Commissioners by ■ — —— majority - of the Commissioners serving at this .....'. poll and by me sworn to and signed as true and correct this...... day of ......, 189..
(Blank) (Printed in).
“John Doe, Presiding Commissioner.
—so as to require and provide for proper attestations to every such tally sheet or compiled statement.
******
“Sec. 65. * * * Whenever the approval of a constitutional amendment or other question be submitted to the vote of the people, such question shall be printed upon the ballot after the list of candidates under each party device. The ballots shall be so printed as to give to each voter a clear opportunity to designate by mark in a sufficient margin at the right of the name of each candidate, his choice of candidates and his answer to questions submitted.
* * sj« }$: *
“Sec. 75. * * * In marking a ballot upon which is printed for submission to the voters any question of the adoption of a constitutional amendment, or any other proposition or question, he shall obliterate with the official stamp the white square in the voting space after the word ‘Yes’ printed at the right of the question, for an affirmative vote upon such question; or he shall obliterate with the official stamp the white square after the word ‘No’ similarly printed, for negative vote upon such question.
sjc s}! % sjí
“Section 1. That all ballots cast in all elections except as hereinafter provided, and for *39 delegates to any constitutional convention, or upon amendments proposed to the Constitution, after the first day of November, in the year eighteen hundred and ninety six, shall be printed and distributed at public expense as hereinafter provided. The printing of the ballots, tally sheets and cards of instruction to voters and their distribution, shall be paid for by the state.”
The learned. Attorney General and district attorney say in their brief:
“These sections of the General Election Law, which we have quoted, we submit to the court, supply the omission in section 21 of the same act of the words ‘constitutional amendments,’ and * * * are to be read with section 21. This section 21 * * * reads as follows:
“ ‘That it shall be the duty of the commissioners at each polling place to keep duplicate lists of the persons voting at such polling place, which lists shall be numbered from one to the end; and said lists so to be kept and numbered as aforesaid, shall be signed and sworn to as correct by them immediately upon closing the polls and before leaving the place or opening the ballot box. As soon as the votes have been counted and the envelopes sealed, as herein provided, the official tally sheet or sheets shall be signed and sworn to by the commissioners, * * * and the number of votes cast for each candidate for national, state, parochial, or municipal offices, * * * for which they were voted, * * * the number of ballots rejected, and the reasons therefor. These compiled statements shall also be sworn to by the said commissioners, the oath to be administered by the deputy sheriff, or one of the commissioners, or by any qualified voter. One of the aforesaid tally sheets, together with the poll books and one of the said compiled statements, shall be delivered to the board of supervisors of each parish.
“ ‘The commissioners of election shall forward to the Secretary of State one of the compiled statements of the vote at their respective boxes or polling places, with the name or names of the candidates voted for, one tally sheet and one of the duplicate poll lists, which returns of the commissioners shall be retained by the Secretary of State for at least six months. The third tally sheet, together with ballots and a poll list of the persons voting, shall be returned to the ballot box, which shall thereupon be sealed by the said commissioners, and the said ballot box containing the ballots and tally sheets and poll lists, as aforesaid, shall be delivered to the clerk of court to be by him safely preserved for a period of six months.
“ ‘The board of supervisors of each parish shall, within three days after the closing of the polls, repair to the court house of the parish and there, in the presence of at least three voters, and as many others as may desire to be present make a true compiled statement as shown by the face of the sworn returns of the commissioners in triplicate, of the result of said election, and make public proclamation of such result, which compiled statements shall be sworn to before some other officer competent to administer an oath.
“ ‘One of the said triplicate compiled statements shall be forwarded to the Secretary of State, one to the clerk of the district court, and the third shall be retained by said board of supervisors.
“ ‘The board of supervisors shall make out a separate compiled statement of the vote for Governor and Lieutenant Governor, which shall be sworn to before some officer competent to administer an oath, and this compiled statement, sealed in a separate envelope and properly marked and attested by the board of supervisors, shall be transmitted to the Secretary of State and shall constitute the returns contemplated by article 62, of the Constitution. Any board of supervisors or any member thereof who shall fraudulently and intentionally make a false or incorrect compiled statement as above provided of the said' vote shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by imprisonment at hard labor for not less than two nor more than five years.
“ ‘Sec. 22. That it shall be the duty of the commissioners themselves, or at least two of them, to carry returns and ballot boxes to the board of supervisors and clerk of court, as required by law; and it shall be the duty of the sheriff to have at each polling place one deputy sheriff, whose duty it shall be to obey orders of the said officers of. election and attend the transmission of the ballot boxes and returns to the board of supervisors and clerk of court.’ ”
“ ‘The whole statute and all of its parts,’ the state contends, ‘are to be taken together and the intention so ascertained Will prevail over its literal import and strict letter.’ ”
The above sentence and some others in the brief are quoted from a treatise on Statutory Construction, in general, in volume 26, A. & E. Ene. of Law; but we find in the same volume and treatise the following, relating more particularly to the interpretation and application of statutes defining crimes and prescribing penalties, to wit:
[1,2] “2. Penal Statutes. * * * It is a well settled rule of law that penal statutes are to be construed strictly. This rule is said to be founded on the tenderness of the law for the rights of individuals and on the plain principle that the power of punishment is vested in the Legislature, not in the judicial department. It is, however, the object of the construction of penal statutes to ascertain the true legislative intent; and, while the courts will not, on the one hand, apply such statutes to cases which *41 are not within the obvious meaning of the language employed, even though they be within the mischief intended to be remedied, they will not, on the other hand, apply the rule of strict construction with such technicality as to defeat the purpose of ascertaining the true meaning and intent of the statute.”
The rule thus stated, that the courts will not apply penal statutes to cases which are not within the obvious meaning of the language employed;, even though they be within the mischief intended to be remedied, is accepted wherever the common law prevails and has not' been modified by legislation.
In United States v. Wiltberger, 5 Wheat. (18 U. ’S.) 95, 5 L. Ed. 37, the Supreme Court of the United States, speaking through Chief Justice Marshall, said:
“The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not in the judicial, department. It is the Legislature, not the court, which is to define a crime, and ordain its punishment.
“It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal, as well as other, statutes. This is true. But this is not a new independent rule which subverts the old. It is a modification of the ancient maxim, and amounts to this: That, though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases, which those words, in their ordinary acceptation, or in that sense in which the Legislature has obviously used them, would comprehend. The intention of the Legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of a kindred character, with those which are enumerated. If this principle of law has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases.”
Counsel for defendants quote passages from such eminent judges as Lords Campbell, Abinger, Denman, Tenterden, Esher, and Lindley, arid from such authors as Story, Bishop, Beal, and Endlich, and cite cases decided by the courts of last resort in the different states of the Union, including the case of State v. Breffeihl, 130 La. 904, 58 South. 763, 40 L. R. A. (N. S.) 535, from all of which it resultó that, if the acts with which defendants are charged are not acts for the doing of which the law imposes a penalty, no penalty can be imposed by the courts. It will be observed that none of the provisions of law, constitutional or statutory, to which the prosecution refers, save section 21 of Act 152 of 1898, impose any duty upon the commissioners of election with respect to the counting and return of votes, and the duty is there imposed in the following language:
“That it shall be the duty of the commissioners at each polling place .to keep duplicate lists of the persons voting at such polling place, which lists shall be numbered from one to the end; and said lists, so to be kept and numbered as aforesaid, shall be signed and sworn to as correct by them immediately upon closing the polls and before leaving the place or opening the ballot box. As soon as the votes have been counted and the envelopes sealed, as herein provided, the official tally sheet or sheets shall be signed and sworn to by the commissioners, and the said officers shall make compiled statements of the number of votes cast for each candidate for national, state, parochial, or municipal offices for which they were voted, * * * the number of ballots rejected, and the reasons therefor. These compiled statements shall also be sworn to by the said commissioners,” etc.
It is then further provided that the commissioners shall make a certain disposition of the compiled statements, but there is no provision whatever in the section, whether mandatory or prohibitory, concerning constitutional amendments; hence no penalty, imposed by other provisions of the statute, can *43 be applied to any supposed violation of any duty assumed to be imposed by said section in connection with such amendments.
Section 30 of the act declares that the Secretary of State shall, at the expense of the state, provide blank forms, of various kinds—
“for use by the commissioners at such polling place in the conduct of the election, count, canvass, and return of the vote cast at each election, and upon any proposed amendment to the Constitution or other question submitted to the voters.”
And a certain form is prescribed for tally sheets and compiled statements; but the section imposes no duty upon the commissioners. To the contrary, immediately following the language above quoted, we find:’
“Said blank forms shall be sent to the boards of supervisors, and shall be used in ascertaining the result of such election, and such result shall be ascertained in the manner hereinafter provided.” (Italics by the court.)
But, though provision had previously been made (in section 21) for the manner of ascertaining the result of an election for “each candidate for national, state, parish, or municipal offices,” no such provision had been or was thereafter made for ascertaining the result of a vote upon a constitutional amendment The provisions of section 18 of the act to the effect that:
“Any commissioner who violates any of the provisions of this act shall be punished as provided for in section 44 of this act”
—and that:
“Any election commissioner who intentionally makes or attempts to make a false canvass of the ballots cast, or any false return of the result of any election, * * * shall be deemed guilty of a felony, and, upon conviction thereof, shall be punished as provided in section 44 of this act, and shall be further disqualified from voting at any election or holding any office of honor, trust or profit in this state”
—and the provision of section 44 to the effect that:
“Any election officer or other person who violates any of the provisions of this act shall be punished,” etc.
—have no application, therefore, to the charge preferred against these defendants.
The learned judge of the. district court states the facts and the law of the case in the concluding language of his able opinion as follows:
“There is nothing in the act. of 1898, or in any other law to which I have been referred, which imposes any duties upon the election commissioners in counting the vote, other than those contained in section 21, above quoted; and the only vote the commissioners are required to count, by section 21, is ‘the. number of votes east for each candidate for national, state, parochial, or municipal offices, * * * for which they were voted.’ Neither the Constitution nor any legislative act makes it the duty of the commissioners of election, appointed in compliance with the requirements of Act 152 of 1898, to count and return the votes cast upon any constitutional amendment, and, nowhere is it declared that this vote shall be entered upon the tally sheets and consolidated statements and constitute part of the official returns.
“An examination of the entire act, and particularly section 30, quoted above, would indicate that it was the intention, further on in the act, to make it the duty of the commissioners of election to canvass the votes on constitutional amendments, as well as those for candidates for office; but, if such was the intention of the Legislature, they have failed to carry it out, and the court is powerless to supply the omission. My duty is to interpret, not to improve, the act. What the Legislature has, either through inadvertence or otherwise, omitted to include within the express provisions of a penal statute, the court cannot supply.”
The judgment appealed from is accordingly affirmed.
See dissenting opinion of LAND, J., 62 South. '227.