**118 So.2d 403**

**STATE of Louisiana**

**v.**

**Lilly CHRISTINE, alias "Cat Girl".**

**No. 44327.**

Nov. 9, 1959.

On Rehearing Feb. 15, 1960.

Rehearing Denied March 21, 1960.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Richard A. Dowling, Dist. Atty., Leonard Dreyfus, Asst. Dist. Atty., New Orleans, for appellant.

Robert Weinstein, Fred Bronfin, Sylvan J. Steinberg of Rittenberg, Weinstein & Bronfin, New Orleans, for appellee.

HAMLIN, Justice.

The State of Louisiana appeals from a judgment of the trial court holding Paragraph Three of LSA–R.S.14:106 [1] unconstitutional, null and void, maintaining defendant's motions to quash and her demurrers to the bill of information filed, and discharging defendant without date.

---

1. "Obscenity is the intentional: * * *
  "(3) Performance by any person, or the showing or display of any picture or motion picture, in any public place or in any public manner, of any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people";

Lilly Christine, also known as the "Cat Girl," was charged by bill of information with a violation of LSA–R.S. 14:106(3), "Obscenity," in that—

"* * * on the sixteenth day of July in the year of our Lord, one thousand nine hundred and fifty-eight * * while in a public place and in a public manner, did wilfully, unlawfully and intentionally perform an act of lewd and indecent dancing, grossly scandalous, and tending to debauch the morals and manners of the people, * ·* *·*"

In her demurrers and motions to quash,[2] along with other legal issues, the defendant contended that Paragraph Three of LSA–R.S. 14:106, supra, under which she was charged, was unconstitutional because the terms *"Performance by any person* * * *, in any public place or in any public manner, of any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people"* were too broad and indefinite to inform the defendant of the nature of the charge against her and whether or not her conduct constituted a violation of the subsection of the statute. (Italics ours.)

In holding Paragraph Three of LSA–R.S. 14:106 unconstitutional, null, and void, the trial judge stated:

"In the case at bar, L.S.A.–R.S. 14:-106, (obscenity), Par. 3, makes it a crime to perform in any public place or in any public manner, 'any act of lewdness or indecency' without describing the particular type, kind, character, conduct, or purpose sought except by due process of law. * * *' It violates Article 1, Section 9, of the Louisiana Constitution which states that the accused ' * * * shall have the right to defend himself * * *'; and, Section 10 of the same article which provides that ' * * * In all criminal prosecution[s], the accused shall be informed of the nature and cause of the accusation against him * * *.' Further, the subsection for the given reasons violates the 6th and 14th Amendments of the United States Constitution, in that the accused is not ' * * * informed of the nature and cause of the accusation * *' (6th Amendment); and, the action of the State would deprive the accused of liberty and property *without due process of law,* and the accused would be denied the equal protection of the laws. (14th Amendment, Section 1)"

2. In paragraph three of defendant's supplemental motion to quash and demurrer, she averred:

"The criminal information herein is based upon L.S.A.–R.S. 14:106(3), as amended by La. Act 314 of 1950. This subsection (3) is unconstitutional in that the terms ' * * * Performance by any person * * *, in any public place or in any public manner, of any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people; * * *', are too broad and indefinite to inform the defendant of the nature of the charge against her and whether or not her conduct constituted a violation of the subsection of the statute. The subsection, therefore, violates Article 1, Section 2, of the Louisiana Constitution, which provides that ' * * * No person shall be deprived of * * * liberty or property,

to be reached by the legislature in adopting the statute."

Therefore, to properly determine the constitutionality vel non of Paragraph Three of LSA–R.S. 14:106, supra, we find it necessary to thoroughly and minutely analyze its context, applying our findings to the instant bill of information.[3]

Firstly, although elementary, we pose the question, "Is a dance a performance?"

· "In a different sense, a 'performance' is a representation on the stage or before an audience or spectators; an exhibition of feats; any entertainment at a place of amusement." 70 C. J.S. Performance p. 451. Cf. Remick & Co. v. American Automobile Accessories Co., D.C., 298 F. 628, 6 Cir., 5 F.2d 411; 269 U.S. 556, 46 S.Ct. 19, 70 L.Ed. 409.

"Performance" is "a formal exhibition of skill or talent, as a play, musical program, etc.; show." Webster's New World Dictionary of the American Language, College Edition.

"Dance"—v. t. "1. to take part in (a dance); perform (a dance)." Webster's New World Dictionary of · the American Language, College Edition.

"Dance"—n. "1. rhythmic movement of the feet or body, ordinarily to music. 2. a particular kind of dance, as the waltz, tango, etc. 3. the art of dancing. * * * 7. rapid, lively movement." Webster's New World Dictionary of the American Language, College Edition.

"Dancer"—"One who dances; specif., a professional performer of dances." Webster's New International Dictionary, Second Edition, Unabridged.

We conclude that dancing is included within the meaning of *performance;* the above authorities show clearly that a performance is very well and generally understood to comprehend a dance, a song, a recitation, an act, a play, a pantomime. The question posed, supra, is answered affirmatively.

Webster's New World Dictionary defines the adjective "Public" as follows: "of, belonging to, or concerning the people as a whole; of the community at large." The syllabus of Nelson v. City of Natches, 197 Miss. 26, 19 So.2d 747, correctly states:

"A 'public place' within municipal ordinance making it a criminal offense for any person to profanely swear or curse or use vulgar or indecent language in any public place within cor-

---

3. " * * * It is not in the abstract, however, that we find the exact meaning of a word, but in the context of combination of words. * * *" State v. Rose, 147 La. 243, 84 So. 643, 646.

porate limits, must be considered as one wherein by general invitation members of the public attend for reasons of business, entertainment, instruction or the like, and are welcome so long as they conform to what is customarily done there."

We find, as the trial judge did in the instant case, that:

"The terms 'public place' and 'public manner,' as used in the statute and the bill of information, have a fixed and definite meaning, and require no further definition as to their meaning. * * *"

Having found that a performance includes a dance, we have now to determine whether the legislature sufficiently described the kind or type of performance done in any public place or in any public manner which it intended to reprobate and punish when it employed the terms *"any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people."* (Italics ours.)

4. In City of Shreveport v. Wilson, we held that Section 4,
"Be it further ordained, etc., that it shall be unlawful for any person to use or occupy any hotel, house, room or other building or place for the purpose of prostitution, assignation or other lewd or indecent act, in the city of Shreveport," of an ordinance of the City of Shreveport was not applicable to an offense alleged

" * * * It is sufficient to say that a criminal statute, in order to be valid and enforceable, must define the offense so specifically or accurately that any reader having ordinary intelligence will know when or whether his conduct is on the one side or the other side of the border line between that which is and that which is not denounced as an offense against the law." State v. Kraft, 214 La. 351, 37 So.2d 815, 817.

"The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA–R.S. 14:3.

City of Shreveport v. Wilson, 145 La. 906, 83 So. 186,[4] 188, is not apposite, but therein we said:

to have been committed by the defendants. We did not pass upon the constitutionality of the ordinance. The decision plainly stated:
"The only question thus presented is whether the municipal ordinance has application to the facts stated.
"Our opinion is that the ordinance is not applicable. * * *"

" * * * 'Lewdness' is not synonymous with 'concubinage.' 'Lewd' means lustful or lascivious. See Words and Phrases, [Lewd]. * *"

Webster's New World Dictionary of the American Language, College Edition, defines "Lewd" as "1. indecent; lustful; unchaste; lascivious." It follows that "Lewdness" means "indecency; lustfulness; unchasteness; lasciviousness."

" * * * It is true that the word 'lewd', when used alone is of a very broad scope. It is defined by Webster's New International Dictionary as 'lay; * * * wicked; lawless; bad; vicious; worthless; base' but it is also defined to be 'lustful; libidinous; lascivious; unchaste * * *.' And the word 'lascivious' is defined as 'wanton; lewd; lustful * * * tending to produce voluptuous or lewd emotions.' Hence, it is seen that when the term 'lewd' is associated with the word 'lascivious' it connotes actions or gestures of a lustful and lecherous nature." State v. Saibold, 213 La. 415, 34 So.2d 909, 911.

In State v. Kraft, 214 La. 351, 37 So.2d 815, 816, we held that there was nothing in the context of the second paragraph of Article 106 of the Criminal Code to give the word "indecent" a definite meaning, and stated:

"The word 'indecent,' standing alone has many different meanings, according to the standard of the individual using or defining the word. In Webster's New International Dictionary the word is defined as 'unbecoming or unseemly'; 'indecorous, as indecent haste'; 'morally unfit to be seen or heard'; 'offensive to modesty and delicacy, as indecent language'; 'immodest'; 'impure'; 'gross'; 'obscene.'"

We believe that the words "indecency" or "lewdness" employed in LSA–R.S. 14:106 (3) do have a definite meaning, because the "lewd or indecent act" has to be "grossly scandalous and tending to debauch the morals and manners of the people." By being "grossly scandalous," we take the state to mean that the moral feelings of the community have to be grossly shocked and offended.

In Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498, the United States Supreme Court approved the following charge given to the jury by the trial judge:

. "The test in each case is the effect of the book, picture or publication considered as a whole, not upon any particular class, but upon all those whom it is likely to reach. In other words, you determine its impact upon the average person in the community. The books, pictures and circulars must be judged

as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion. You judge the circulars, pictures and publications which have been put in evidence by present-day standards of the community. You may ask yourselves does it offend the common conscience of the community by present-day standards."

We believe that the above test applies to a case such as the instant one. The word "performance" could be substituted for "books, pictures, and circulars."

In the Roth case, supra, the Court also made the following pertinent observation:

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. '* * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices * * *.' United States v. Petrillo, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark '* * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.' Id., 332 U.S. at page 7, 67 S.Ct. at page 1542. See also United States v. Harriss, 347 U.S. 612, 624, note 15, 74 S.Ct. 808, 815, 98 L.Ed. 989; Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367; United States v. Ragen, 314 U.S. 513, 523–524, 62 S.Ct. 374, 378, 86 L.Ed. 383; United States v. Wurzbach, 280 U.S. 396, 50 S.Ct. 167, 74 L.Ed. 508; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402; Fox v. State of Washington, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573; Nash v. United States, 229 U.S. 373, 33 S.Ct. 780, 57 L.Ed. 1232."

We believe that the issues in the instant case have been previously determined in the case of State v. Rose, 147 La. 243, 84 So. 643, 644, wherein the indictment charged that the defendant "* * * did then and there unlawfully keep a house of public entertainment at the municipal number 318 Dauphine street, in the city of New Orleans, in which he did then and

there permit *lewd dancing.* * * * " (Emphasis ours.) The statute under which that defendant was charged (Act No. 199 of 1912) defined a disorderly house as "any house of public entertainment, or a public resort. * * * also any place in which *lewd dancing* is permitted * * *." (Emphasis ours.) In affirming the conviction of the defendant, this Court said:

"Appellant concedes that the word 'dancing' is well understood, but he contends that the adjective 'lewd' has so many and diverse meanings that it does not definitely describe the kind of dancing that the statute undertakes to denounce as offensive. He reminds us that there is hardly a word in the English language that has only one meaning. It is not in the abstract, however, that we find the exact meaning of a word, but in the context or combination of words. As counsel for appellant says, the word 'lewd' has no statutory definition, nor technical meaning. But it has, particularly when applied to dancing, the very well and generally understood and unmistakable meaning, indecent, lascivious, lecherous, tending to excite lustful thoughts. If all of these qualifying terms were contained in the statute, they would amount to nothing but tautology, which is no more desirable in a statute than in a newspaper write-up or elsewhere."

The only difference between the Rose case, supra, and the instant case is that the defendant Rose was keeping a disorderly house by permitting lewd dancing, while herein the defendant is the dancer. Applying the test, yardstick, or theory—call it what one will—as applied in the Rose and Roth cases, supra, to the instant case, we find:

(1) That dancing, as stated supra, is included within the meaning of *performance;* a performance is very well and generally understood to include a dance, a song, a recitation, an act, a play, a pantomime, all of which could be *acted or performed* in a *lewd* and *indecent manner.*

(2) The words "any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people" have, particularly when applied to dancing, the very well and generally understood and unmistakable meaning, lascivious, lecherous, tending to excite lustful thoughts.

If all of the qualifying terms above enumerated were contained in LSA–R.S. 14:-106(3), they would amount to nothing but tautology or redundancy.

We conclude that the word "performance" and the words "of any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people," as set forth in LSA–R.

S. 14:106(3), clearly and immediately indicate exactly what the legislature intended.

A person accused of a criminal offense is presumed to be innocent until this presumption is overcome by the weight of the evidence. The burden is upon the State to prove, beyond a reasonable doubt, every essential element constituting the offense charged. The trial judge is vested with the discretion to determine, after hearing the evidence in the instant case and weighing the facts adduced by the evidence, whether or not the dance is lewd and indecent, grossly scandalous, and tending to debauch the morals and manners of the people.

In a supplemental demurrer and motion to quash, defendant further contended that she was entitled to a legislative pardon because Act 314 of 1950 (amending and reenacting LSA–R.S. 14:106) was amended by Act 388 of 1958, which became effective at noon, July 30, 1958. This amendment raised the maximum fine of five hundred dollars to two thousand dollars and changed the maximum imprisonment from two years to five years at hard labor. Defendant argues that the instant bill of information was filed on July 24, 1958 under the 1950 Act, and that at the time of hearing such Act was no longer in effect by virtue of the repealing clause contained in Act 388 of 1958.

We do not find that Section 2 of Act 388 of 1958, namely, "all laws or parts of laws

in conflict herewith are hereby repealed," had the effect of erasing the information filed against the defendant. No mention is made therein that prosecutions based on informations filed under Act 314 of 1950 should not be tried.

The general saving statute, LSA–R.S. 24:171, which recites—

"The repeal of any law shall not have the effect of releasing or extinguishing any penalty, forfeiture or liability, civil or criminal, incurred under such law unless the repealing act expressly so provides, and such law shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability,"

is regarded as being written into Act 388 of 1958, State v. Bowie, 221 La. 41, 58 So.2d 415. See, State v. Robinson, 221 La. 19, 58 So.2d 408.

We agree with the finding of the trial judge that Act 388 of 1958 does not expressly provide for the release and extinguishment of the penalty incurred under LSA–R.S. 14:106 prior to its amendment by Act 388 of 1958, and that this Act does not operate as a legislative pardon of defendant's alleged offense. In view of this finding, defendant's further claim that she should be discharged, because otherwise the action of the State would violate the

Ex Post Facto provisions of the State and United States Constitutions, is without merit.

For the reasons assigned, the judgment of the trial court, holding Paragraph Three of LSA–R.S. 14:106 unconstitutional, null and void, maintaining defendant's motions to quash and her demurrers to the bill of information filed, and discharging defendant without date, is reversed and set aside; and, it is now ordered that the cause be remanded for trial.

FOURNET, C. J., dissents and assigns written reasons.

McCALEB, J., concurs with written reasons.

SIMON, J., dissents and adopts and concurs in the dissenting views of the CHIEF JUSTICE.

McCALEB, Justice (concurring).

I subscribe to the majority ruling. Obscenity, as applied to this case, is defined to be the intentional *"Performance* by any person, * * * in a public place or in a public manner, of any act of lewdness or indecency, * * *"* or, stated in another way, a *lewd public performance.* The word "lewd" has a broad meaning when used alone but, when associated with the words *public performance*, it connotes a lecherous, libidinous, lascivious performance, i. e., an entertainment or show tending to excite lustful thoughts. State v. Rose, 147 La. 243, 84 So. 643 and State v. Saibold, 213 La. 415, 34 So.2d 909.

FOURNET, Chief Justice (dissenting).

The trial judge, in quashing the bill of information charging the defendant, Lilly Christine, with obscenity, in violation of RS 14:106(3), gives, in an able and well-considered opinion, an exhaustive analysis of the jurisprudence of this court on the subject matter; and, in concluding that the phrase *"Performance * * * of any act of lewdness or indecency"* as used in the act and in charging the accused is, taken either alone or in context, so indefinite, vague, and uncertain it renders Paragraph 3 of RS 14:-106 invalid and unenforceable, summarizes the substance of the pertinent jurisprudence thusly: " * * * when the Supreme Court of Louisiana had before it the words *'lewd or indecent acts'* (City of Shreveport v. Wilson, 145 La. 906, 83 So. 186) ; *'perform any immoral act'* (State v. Vallery, 212 La. 1095, 34 So.2d 329); *'immoral purpose'* (State v. Truby, 211 La. 178, 29 So.2d 758) ; *'indecent print, etc.'* (State v. Kraft, 214 La. 351, 37 So.2d 815; *'indecent assault'* (State v. Comeaux, 131 La. 930, 60 So. 620), without further qualification, explanation, or limitation as to what particular lewd, immoral, or indecent conduct the legislature sought to punish as a crime, the court de-

clared the statute unconstitutional for the reasons therein cited."

It is conceded by the state in brief and by the majority opinion that the decision in this case depends entirely on whether the performance of *"any act of lewdness or indecency"* is sufficiently descriptive to (1) inform the accused with exactness the charge against her, and (2) give her an opportunity to properly defend herself, but the state contends a 'lewd performance' is the same as 'lewd dancing,' which was held in State v. Rose, 147 La. 243, 84 So. 643, to be sufficiently descriptive to meet the test of constitutionality, since the word "performance" includes "dancing" as well as all other types of entertainment, and the state has been sustained in this contention by the majority. (Emphasis supplied.)

A cardinal rule basic in our law provides that one cannot be held accountable, or subjected to criminal prosecution, for any act of commission unless and until that act has first been denounced as a crime in a statute that defines the act sought to be denounced with such precision the person sought to be held accountable will know his conduct falls within the purview of the act intended to be prohibited by, and will be subject to the punishment fixed in, the statute. And the courts have not only consistently refused to usurp the prerogatives of the legislature by supplying either the definition or essential elements thereof that have been omitted in the drafting of the statute, but, under rules calling for strict construction in all criminal and penal statutes as stricti juris, resolved ambiguities in favor of the accused. State v. Smith, 30 La.Ann. 846; State v. Peters, 37 La. Ann. 730; State v. Gaster, 45 La.Ann. 636, 12 So. 739; State v. Breffeihl, 130 La. 904, 58 So. 763, 40 L.R.A.,N.S., 535; State v. Palanque, 133 La. 36, 62 So. 224; State v. Gardner, 151 La. 874, 92 So. 368; State v. Brunson, 162 La. 902, 111 So. 321, 50 A.L. R. 1531; State v. Terrill, 169 La. 144, 124 So. 673; State v. Williams, 173 La. 1, 136 So. 68; State v. Rodosta, 173 La. 623, 138 So. 124; State v. Hebert, 179 La. 190, 153 So. 688; State v. Reed, 188 La. 402, 177 So. 252; State v. Smith, 194 La. 1015, 195 So. 523; State v. Gehlbach, 205 La. 340, 17 So.2d 349; State v. Vallery, 212 La. 1095, 34 So.2d 329; State v. Kraft, 214 La. 351, 37 So.2d 815; State v. Penniman, 224 La. 95, 68 So.2d 770; State v. Arkansas Louisiana Gas Co., 227 La. 179, 78 So.2d 825; State v. Viator, 229 La. 882, 87 So.2d 115, and the authorities therein cited.

While "The dividing line between what is lawful and unlawful cannot be left to conjecture * * * Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizens may act upon the one conception of its requirements and the courts upon another." United States v. Capital Traction Co., 34 App.D.C. 592, 19 Ann.Cas. 68,

quoted with approval in Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 127, 70 L.Ed. 322, where it was further pointed out that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." And, as stated in a familiar quotation from the reports of the United States Supreme Court, "Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large." United States v. Reese, 92 U.S. 214, 23 L.Ed. 563. (Emphasis supplied.)

This court, in the early case of State v. Comeaux, 131 La. 930, 60 So. 620, held Act 202 of 1912, seeking to define and punish *indecent assaults,* to be unconstitutional for the reason that "*the act does not say what shall constitute an indecent assault, and the court is without authority to determine this matter,*" and, following this same principle in a later case (City of Shreveport v. Wilson, 145 La. 906, 83 So. 186, 187), reversed the conviction and sentence of the defendants, charged with violation of an ordinance of Shreveport that made it unlawful to use any hotel, house, apartment, etc., "for the purpose of prostitution or assignation *or other lewd or indecent act,*" holding that concubinage (which the facts revealed the defendants were practicing) "is neither prostitution nor assignation, within the accepted meaning of the words," and the words "'or other *lewd or indecent act,*' * * * *add nothing to the ordinance.*" Or, as stated by the author of the Wilson opinion (the late Chief Justice Charles A. O'Niell), when writing the court's decision in the Rose case [147 La. 243, 84 So. 646] (on which the state strongly relies). "The ruling was that concubinage was not prostitution or assignation, within the ordinary meaning of the words, and *that, in so far as the statute undertook to punish for any 'other lewd or indecent act,' the language was too vague and indefinite to inform the party accused 'of the nature and cause of the accusation against him.'*" In differentiating the holding in the Wilson case from the holding in the Rose case, the court concluded the phrase "lewd *dancing*" was sufficiently descriptive for the reason that the adjective "lewd," though susceptible of more than one definition or meaning, ceased to be ambiguous when taken in its context as a modifier of "dancing," *a noun having a specific, fixed, and well accepted meaning.* (Emphasis supplied.)

In State v. Truby, 211 La. 178, 29 So.2d 758, 759, (where we held Article 104 of the Criminal Code defining the crime of keeping a disorderly place as "the intentional

maintaining of a place * * * for any * * * *immoral purpose*" to be unconstitutional for vagueness and indefiniteness), these two cases (the Wilson and the Rose) were again differentiated by the author, Mr. Justice Hawthorne, in clear language and lucid reasoning, thusly: "* * * when called upon to find the meaning of the words '*lewd or indecent act*' in City of Shreveport v. Wilson, the court was confronted with the problem of construing the adjectives 'lewd' and 'indecent,' which may have more than one meaning, and *the noun* '*act,*' which is also susceptible of more than one definition. Consequently, the phrase '*lewd or indecent act*' was held to be too vague and indefinite to define a crime with any certainty." Continuing, the author aptly observed: "* * * the case of City of Shreveport v. Wilson is more nearly applicable to the case here under consideration than is State v. Rose, because the phrase which must be construed is 'immoral purpose,' and not some 'immoral' thing which has a specific and fixed meaning," pointing out that when, in State v. Rose, "the court was called upon to find the meaning of the phrase 'lewd dancing,' it had for its consideration a noun, 'dancing,' which has a specific, fixed, and well accepted meaning, and found that the adjective 'lewd,' when taken in its context as a modifier of 'dancing,' ceased to be ambiguous, and that therefore the phrase 'lewd dancing' was

sufficiently definite to charge a crime." (Emphasis supplied.)

In State v. Vallery, 212 La. 1095, 34 So. 2d 329, 330, presented for our determination just one year later, we were requested to reconsider our decision in the Truby case, but, in a unanimous decision, we refused to do so, holding instead that a statute defining the crime of contribution to the delinquency of a juvenile as "the intentional enticing, aiding, or permitting, by any one over the age of seventeen, or any child under the age of seventeen to: * * * *Perform any immoral act,*" Cr. Code. art. 92, subd. 7, was unconstitutional by reason of the vagueness and indefiniteness of the phrase *"immoral act."* (Emphasis supplied.)

In my opinion the trial judge was bound by the long line of judicial pronouncements of this court in quashing the indictment in the instant case. I think clearly the Rose case is without application here and is easily distinguishable from the case at bar, as demonstrated in the Truby case. There is not a single word in the phrase "Performance * * * of any act of lewdness or indecency"—either alone or taken in context with the remaining words in the phrase—that has a fixed meaning. The decision in the Comeaux case, where "indecent *assault;*" in the Wilson case, where "lewd or indecent *act;*" in the Vallery case, where "perform any immoral *act;*" and in the Truby

case, where "immoral *purpose*" were all held to be too vague and indefinite to define a crime, are more comparable to "Performance * * * of any *act* of lewdness or indecency," the language used in defining the crime of obscenity with which we are concerned in the instant case. (Emphasis supplied.)

This court cannot, under the guise of interpretation, assume legislative functions that would, in effect, confer upon the several courts of the state the power to decide not only what constitutes "performance * * * of any act of lewdness or indecency," in the concept of the accepted standard of that phrase in the respective communities, but also to determine what, in each community, would be considered "grossly scandalous and tending to debauch the morals and manners of the people." As pointed out in the Vallery decision, if this

were permitted "there would be no certain or understandable rule and no uniform standard of conduct to guide the individual in ascertaining what acts it is his duty to avoid, doing violence not only to the constitutional requirement that the ascertainable standard of guilt by which all citizens are to be guided be fixed by the legislative branch of the government, but also to the equal protection and due process clauses safeguarding against discrimination." See, State v. Smith, 30 La.Ann. 846, and State v. Gaster, 45 La.Ann. 636, 12 So. 739.

I therefore respectfully dissent.

On Rehearing.

FOURNET, Chief Justice.

The bill of information charging the defendant, Lilly Christine, with obscenity, in violation of paragraph (3) of R.S. 14:106,[1]

---

1. R.S. 14:106, formerly Article 106 of the Louisiana Criminal Code, declares that

    "Obscenity is the intentional:

    "(1) Exposure of one's person in a public place in such manner that any part of a sex organ may be seen by another person; or

    "(2) Production, sale, exhibition, possession with intention to display, exhibit, or sell, or the advertisement of, any obscene, lewd, lascivious, filthy, or sexually indecent print, picture, motion picture, written composition, model, instrument, contrivance or thing of whatsoever description; or

    "(3) *Performance by any person*, or the showing or display of any picture or motion picture, *in any public place or in any public manner, of any act of lewdness or indecency, grossly scan-*

    *dalous and tending to debauch the morals and manners of the people;* or

    "(4) Solicitation or attempt to entice another, in any public place or in any public manner, to commit any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people; or

    "(5) Solicitation or attempt to entice another person to commit any public act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people.

    "Whoever commits the crime of obscenity shall be fined not more than two thousand dollars, or imprisoned for not more than five years at hard labor, or both." (As amended, Acts 1958, No. 388, Sec. 1) (Emphasis supplied)

having been quashed by the trial judge on the ground the statute is unconstitutional, the state has appealed.[2]

The trial judge, in quashing the bill of information, gives, in an able and well-considered opinion, an exhaustive analysis of the jurisprudence of this Court on the subject matter; and, in concluding that the phrase *"Performance * * * of any act of lewdness and indecency"* as used in the act and in charging the accused is, taken either alone or in context, so indefinite, vague, and uncertain it renders Paragraph 3 of R.S. 14:106 invalid and unenforceable, summarizes the substance of the pertinent jurisprudence thusly: *" * * * when the Supreme Court of Louisiana had before it the words 'lewd or indecent acts'* (City of Shreveport v. Wilson, 145 La. 906, 83 So. 186); *'perform any immoral act'* (State v. Vallery, 212 La. 1095, 34 So. 2d 329); *'immoral purpose'* (State v. Truby, 211 La. 178, 29 So.2d 758); *'indecent print, etc.'* (State v. Kraft, 214 La. 351,

37 So.2d 815); *'indecent assault'* (State v. Comeaux, 131 La. 930, 60 So. 620), without further qualification, explanation, or limitation as to what particular lewd, immoral, or indecent conduct the legislature sought to punish as a crime, the court declared the statute unconstitutional for the reasons therein cited;" but when "the legislature particularized the 'lewd,' 'lascivious,' or 'indecent' conduct it intended to reach in adopting the statute, the court held the statute constitutional. State v. Rose, 147 La. 243, 84 So. 643, *'lewd dancing';* State v. Saibold, 213 La. 415, 34 So. 2d 909, *'lewd or lascivious act with the intention of arousing or gratifying the sexual desires, etc.';* State v. Roth, 226 La. 1, 74 So.2d 392, *'sexually indecent'."*

Counsel for the state, in their original brief, did not challenge this jurisprudence, and concede that the decision in this case depends entirely on whether the performance of an "act of lewdness or indecency" is sufficiently descriptive to (1) inform the

---

Under the italicized portion of the said paragraph (3) of this Statute, it was charged that the accused, "while in a public place and in a public manner," did "wilfully, unlawfully and intentionally perform an act of lewd and indecent dancing, grossly scandalous, and tending to debauch the morals and manners of the people."

2. The accused filed a supplemental motion to quash in which it was contended the Legislature, in adopting Act No. 388 of 1958 amending R.S. 14:106 by increasing the penalty, without the inclusion of a saving clause, automatically granted

her a legislative pardon—otherwise, it would be an ex post facto law, violative of section 15 of Article IV of the Louisiana Constitution of 1921 and Clause 1 of Section 10 of Article I of the Constitution of the United States, since the act with which she is charged was committed on July 16, 1958, and the effective date of the repealing statute was July 30, 1958. Although the trial judge overruled this motion, in view of the conclusion we reach on the original motion, we express no opinion with respect to the correctness of his ruling on this supplemental motion.

accused with exactness the charge against her, and (2) give her an opportunity to properly defend herself, but contend that a "lewd performance" is the same as "lewd dancing"—held in State v. Rose, 147 La. 243, 84 So. 643, to be sufficiently descriptive to meet the test of constitutionality— since the word "performance" includes "dancing" as well as all other types of entertainment.

■■ A cardinal rule basic in our law provides that one cannot be held accountable, or subjected to criminal prosecution, for any act of commission unless and until that act has first been denounced as a crime in a statute that defines the act sought to be denounced with such precision the person sought to be held accountable will know his conduct falls within the purview of the act intended to be prohibited by, and will be subject to the punishment fixed in, the statute. And the courts have not only consistently refused to usurp the prerogatives of the legislature by supplying either the definition or essential elements thereof that have been omitted in the drafting of the statute, but, under rules calling for construction of all criminal and penal statutes as *stricti juris,* resolved ambiguities in favor of the accused. State v. Smith, 30 La.Ann. 846; State v. Peters, 37 La.Ann. 730; State v. Gaster, 45 La.Ann. 636, 12 So. 739; State v. Breffeihl, 130 La. 904, 58 So. 763, 40 L.R.A.,N.S., 535; State v. Palanque, 133 La. 36, 62 So. 224; State v. Gardner, 151 La. 874, 92 So. 368; State v. Brunson, 162 La. 902, 111 So. 321, 50 A.L.R. 1531; State v. Terrill, 169 La. 144, 124 So. 673; State v. Williams, 173 La. 1, 136 So. 68; State v. Rodosta, 173 La. 623, 138 So. 124; State v. Hebert, 179 La. 190, 153 So. 688; State v. Reed, 188 La. 402, 177 So. 252; State v. Smith, 194 La. 1015, 195 So. 523; State v. Gehlbach, 205 La. 340, 17 So.2d 349; State v. Vallery, 212 La. 1095, 34 So.2d 329; State v. Kraft, 214 La. 351, 37 So. 2d 815; State v. Penniman, 224 La. 95, 68 So.2d 770; State v. Arkansas-Louisiana Gas Co., 227 La. 179, 78 So.2d 825; State v. Viator, 229 La. 882, 87 So.2d 115, and the authorities therein cited.

■■ "The dividing line between what is lawful and unlawful cannot be left to conjecture * * *. Penal statutes prohibiting the doing of certain things, and providing a punishment for their violation, should not admit of such a double meaning that the citizens may act upon the one conception of its requirements and the courts upon another," United States v. Capital Traction Co., 34 App.D.C. 592, 19 Ann.Cas. 68, quoted with approval in Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 128, 70 L.Ed. 322, where it was further pointed out that " * * * a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and

differ as to its application violates the first essential of due process of law." 269 U.S. at page 391, 46 S.Ct. at page 127, 70 L.Ed. at page 328. And, as stated in a familar quotation from the reports of the United States Supreme Court, "Every man should be able to know with certainty when he is committing a crime. * * * It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could be rightfully detained and who should be set at large." United States v. Reese, 92 U.S. 214, 23 L.Ed. 563, 565 and 566.

This court, in the early case of State v. Comeaux, 131 La. 930, 60 So. 620, held Act 202 of 1912, seeking to define and punish *indecent assaults,* to be unconstitutional for the reason that *"the act does not say what shall constitute an indecent assault, and the court is without authority to determine this matter,"* and, following this same principle in a later case (City of Shreveport v. Wilson, 145 La. 906, 83 So. 186, 187), reversed the conviction and sentence of the defendants, charged with violation of an ordinance of Shreveport that made it unlawful to use any hotel, house, apartment, etc., "for the purpose of prostitution, or assignation *or other lewd or indecent act,"* holding that concubinage (which the facts revealed the defendants were practicing) "is neither prostitution not assignation, within the accepted mean-

ing of the words," and the words " 'or other lewd. or indecent act,' * * * add nothing to the ordinance." Or, as stated by the author of the Wilson opinion (the late Chief Justice Charles A. O'Niell), when writing the court's decision in the Rose case, supra (147 La. 243, 84 So. 643, 646, a case on which the state strongly relies), "The ruling was that concubinage was not prostitution or assignation, within the ordinary meaning of the words, and that, in so far as the statute undertook to punish for any 'other lewd or indecent act,' the language was too vague and indefinite to inform the party accused 'of the nature and cause of the accusation against him.' " In differentiating the holding in the Wilson case from the holding in the Rose case, the court concluded the phrase " *lewd dancing"* was sufficiently descriptive for the reason that the adjective "lewd", though susceptible of more than one definition or meaning, ceased to be ambiguous when taken in its context as a modifier of "dancing", a noun having a specific, fixed, and well accepted meaning. (Emphasis supplied.)

In State v. Truby, 211 La. 178, 29 So. 2d 758, 759, (where we held Article 104 of the Criminal Code defining the crime of keeping a disorderly place as "the intentional maintaining of a place * * * *for any * * * immoral purpose"* to be unconstitutional for vagueness and indefiniteness), these two cases (City of

Shreveport v. Wilson and State v. Rose) were again differentiated by the author, Mr. Justice Hawthorne, in clear language and lucid reasoning, thusly: " * * * when called upon to find the meaning of the words 'lewd or indecent act' in City of Shreveport v. Wilson, the court was confronted with the problem of construing the adjectives 'lewd' and 'indecent,' which may have more than one meaning, and the noun 'act,' which is also susceptible of more than one definition. Consequently, the phrase 'lewd or indecent act' was held to be too vague and indefinite to define a crime with any certainty." Continuing, the author observed: " * * * the case of City of Shreveport v. Wilson is more nearly applicable to the case here under consideration than is State v. Rose, because the phrase which must be construed is 'immoral purpose,' and not some 'immoral' thing which has a specific and fixed meaning," pointing out that when, in State v. Rose, "the court was called upon to find the meaning of the phrase 'lewd dancing,' it had for its consideration a noun, 'dancing,' which has a specific, fixed, and well accepted meaning, and found that the adjective 'lewd,' when taken in its context as a modifier of 'dancing,' ceased to be ambiguous, and that therefore the phrase 'lewd dancing' was sufficiently definite to charge a crime." 211 La. at pages 199–200, 29 So.2d at page 765; emphasis supplied.

In State v. Vallery, 212 La. 1095, 34 So. 2d 329, 330, presented for our determination just one year later, we were requested to reconsider our decision in the Truby case, but, in a unanimous ruling we refused to do so, holding instead that a statute defining the crime of contribution to the delinquency of a juvenile as "the intentional enticing, aiding, or permitting, by any one over the age of seventeen, of any child under the age of seventeen to: * * * *Perform any immoral act,*" was unconstitutional by reason of the vagueness and indefiniteness of the phrase "immoral act." (Emphasis supplied.)

It is apt to observe here that following the rationale of these two decisions, and within a year of the latter, in State v. Kraft, 214 La. 351, 37 So.2d 815, 816, the second paragraph of R.S. 14:106, formerly Article 106 of the Louisiana Criminal Code, as originally written, defining obscenity as "Production, sale, exhibition, possession with the intent to display, or advertisement of any indecent print, picture, written composition, model or instrument," was declared unconstitutional for the reason that the word "indecent" was too broad and indefinite to inform anyone as to whether his conduct would constitute a violation of the statute. This opinion was handed down by a unanimous court and therein the late Chief Justice O'Niell, the author, relying on the Truby case and its affirmation in State v. Vallery, supra,

to support his conclusion, commented: "A review of the earlier decisions on this subject is given in State v. Truby, supra, and need not be repeated here. It is sufficient to say that a criminal statute, in order to be valid and enforceable, must define the offense so specifically or accurately that any reader having ordinary intelligence will know when or whether his conduct is on the one side or the other side of the border line between that which is and that which is not denounced as an offense against the law." [3] 214 La. at page 356, 37 So.2d at page 817.

We are constrained to hold, as did the court in State v. Truby, supra, that the decision of this court in the case of State v. Rose, supra, is not controlling here. The phrase "lewd performance" is just as vague and indefinite as "the performance of any act of lewdness or indecency," or of "a lewd and indecent act," the last having been held to be too vague and indefinite to inform the party accused of the nature and cause of the accusation against him in the case of City of Shreveport v. Wilson, supra. See State v. Rose, 147 La. 243, at page 252, 84 So. 643, at page 646.

■■ Clearly, therefore, the trial judge, being bound by the judicial pronouncements of this court, was without choice to pursue any other course than the one he adopted; and unless we are prepared to overrule this jurisprudence, we cannot accede to the suggestion of counsel for the state in their supplemental brief that we follow the reasoning of the Supreme Court of Georgia in the case of Fowler v. State, 189 Ga. 733, 8 S.E.2d 77. For this court cannot, under the guise of interpretation, assume legislative functions that would, in effect, confer upon the several courts of the state the power to decide not only what constitutes "performance * * * of any act of lewdness or indecency" in the concept of the accepted standard of that phrase in the respective communities, but also to determine what, in each community, would be considered "grossly scandalous and tending to debauch the morals and manners of the people." As pointed out in the case of State v. Vallery, supra, if this were permitted "there would be no certain or understandable rule and no uniform standard of conduct to guide the individual in ascertaining what acts it is his duty to avoid, doing violence not only to the constitutional requirement that the ascertainable standard of guilt by which all citizens are to be guided be fixed by the legislative branch of the government but also to the equal protection and due process clauses safeguarding against discrimination." 212 La. at page 1100, 34 So.2d at page 331, See

---

3. The Legislature, by Act 314 of 1950, amended and rewrote the paragraph and inserted the word "sexually" before the words "indecent print;" and this was held to be sufficient in State v. Roth, 226 La. 1, 72 So.2d 392.

also State v. Smith, 30 La.Ann. 846, and State v. Gaster, 45 La.Ann. 636, 12 So. 739.

And whatever merit there might be in language lifted from the decision of the United States Supreme Court in the case of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, were this an original proposition, can afford the state little consolation in view of our jurisprudence that has been settled for many years, as reflected by the positive pronouncements in the decisions above discussed.

For the reasons assigned, the judgment appealed from is affirmed.

McCALEB, J., concurs with written reasons.

HAMITER and HAMLIN, JJ., dissent with written reasons.

HAWTHORNE, J., dissents.

HAMITER, Justice (dissenting).

LRS 14:106(3), with the violation of which the accused is charged, provides: "Obscenity is the intentional: * * * (3) Performance by any person, * * * in any public place or in any public manner, of any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the people * * *." This provision, in my opinion, admits of no double meaning and is not indefinite, vague and uncertain so as to render it invalid and unenforceable.

According to modern usage the word "lewdness" connotes lustful, libidinous, lascivious, unchaste conduct; "indecency" is a state of unfitness to be seen or heard. See Webster's New International Dictionary, Second Edition. This being true the statute in question, when considered in its entirety as must be done, can only be interpreted as prohibiting the performance in a public place or in a public manner of any act which offends against sexual morality and decency—any act (to use the language contained in State v. Rose, 147 La. 243, 84 So. 643, 646) "tending to excite lustful thoughts."

The decisions cited in support of the majority opinion are inapposite. Only City of Shreveport v. Wilson, 145 La. 906, 83 So. 186, 187, involved a law that denounced lewd and indecent acts; and the question of its constitutionality or validity was not determined. In setting aside the convictions and sentences therein the court observed and ruled: "The only question thus presented is whether the municipal ordinance has application to the facts stated.

"Our opinion is that the ordinance is not applicable. * * *"

In the remaining cases relied on by the majority the language of the assailed laws,

found to be susceptible of varying meanings, was entirely dissimilar to that of the instant statute.

I respectfully dissent.

McCALEB, Justice (concurring).

In subscribing to the majority ruling on the original hearing I stated in a separate opinion that the crime of obscenity, as applied to this case, had been adequately defined by the Legislature in R.S. 14:106(3) because the statutory descriptive words "lewdness or indecency" were used in association with the noun "performance" thereby signifying the prohibition of a lewd or indecent public performance or entertainment—a well defined and certain type of act within the rulings in State v. Rose, 147 La. 243, 84 So. 643, "lewd dancing" and State v. Saibold, 213 La. 415, 34 So. 2d 909, 910 "lewd or lascivious act * * * with the intention of arousing or gratifying the sexual desires, * * *".

After further consideration, I am convinced that this view and that of the majority of the court on original hearing was not well founded.

The error I now perceive concerns the meaning of the word "performance" as used·in the statute. By transposing the noun "performance" as the object of lewdness and indecency so as to make it synonymous with public entertainment or

public show, the conclusion was drawn that the conduct the Legislature intended to reach was lewd and indecent public performances or shows. But this was inaccurate because the noun "performance" is. not used in the statute as a noun but as the verb "to do" (see State v. Wooderson, 213 La. 40, 34 So.2d 369) and the provision, when properly interpreted, simply defines obscenity as the performance or doing in public of a lewd or indecent act.

When thus viewed, it is seen that the statute fails to apprise an accused with any degree of definiteness of the nature of the conduct prohibited and, therefore, it falls in the same category as the statutes which have been heretofore stricken with nullity by this Court in State v. Comeaux, 131 La. 930, 60 So. 620 "indecent assault"; City of Shreveport v. Wilson, 145 La. 906, 83 So. 186, 187, "lewd or indecent acts"; State v. Truby, 211 La. 178, 29 So.2d 758 "immoral purpose"; State v. Vallery, 212 La. 1095, 34 So.2d 329, 330, "perform an immoral act" and State v. Kraft, 214 La. 351, 37 So.2d 815 "indecent print, etc."

For these reasons and those expressed in the majority opinion, I respectfully concur.

HAMLIN, Justice (dissenting).

I am still of the opinion that LSA–R.S. 14:106(3), Act 314 of 1950, Sec. 1(3), is constitutional for the reasons set forth in

the original opinion, of which I was the author, and to which views I adhere.

The decision in the case of Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, which I feel is applicable to this matter and supports my views, has been cited with approval in the cases of Mounce v. United States of America, 9 Cir., 247 F.2d 148, 149;[1] United States v. Keller, 3 Cir., 259 F.2d 54. I again quote the charge given to the jury in the Roth case, supra [354 U.S. 476, 77 S.Ct. 1312], which was approved by the United States Supreme Court:

"The test in each case is the effect of the book, picture or publication considered as a whole, not upon any particular class, but upon all those whom it is likely to reach. In other words, you determine its impact upon the average person in the community.

[1] "We are in agreement with Judge Driver's opinion that the standard to be applied in determining whether or not publications are obscene within the meaning of § 1305(a) of Title 19 U.S.C.A. 'is the judgment of the average, normal, reasonable, prudent person of the community in which the publication is circulated. If, at the time of such circulation, considered as a whole it offends the sense of propriety, morality, and decency of such average person, it is within the bar of the statute. Otherwise it is not. Guided by these general principles * * the trier of facts must draw the line as best he can between art and pornography —between what is permissible and what is objectionable and obscene.'

The books, pictures and circulars must be judged as a whole, in their entire context, and you are not to consider detached or separate portions in reaching a conclusion. You judge the circulars, pictures and publications which have been put in evidence by present-day standards of the community. You may ask yourselves does it offend the common conscience of the community by present-day standards."

I believe that the above test applies to a case such as the instant one. The noun "performance" can be substituted for "books, pictures, and circulars."

I repeat: The word "performance" and the words "of any act of lewdness or indecency, grossly scandalous and tending to debauch the morals and manners of the public," as set forth in LSA–R.S. 14:106 (3), clearly and immediately indicate exactly what the legislature intended.

"We find no error in the trial court's findings of fact, based upon its application of this standard to the facts established by the record in this case. We adopt Judge Driver's opinion as the opinion of the court. United States v. 4200 Copies International Journal, D.C., 134 F. Supp. 490, 493.

"The constitutional questions which appellant has raised in this court and which were not discussed in the opinion of the district court have been foreclosed by the decision of the Supreme Court in Roth v. United States, [354 U.S. 476] 77 S.Ct. 1304 [1 L.Ed.2d 1498].

"The judgment is affirmed."

It is interesting to note that not once has anyone who urged that the statute herein involved is unconstitutional, even faintly suggested how the Obscenity Law should be worded so as to make it constitutional.

I respectfully dissent.