# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-35

**STATE OF LOUISIANA**

**VERSUS**

**HENRY MILTON SCOTT**
**A/K/A HENRY J. SCOTT, JR.**
**A/K/A HENRY SCOTT**
**A/K/A HENRY J. SCOTT**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. CR-166589
HONORABLE ROYALE L. COLBERT, JR., DISTRICT JUDGE

**********

### SHANNON J. GREMILLION
### JUDGE

**********

Court composed of Shannon J. Gremillion, John E. Conery, and Gary J. Ortego, Judges.

**ORTEGO, Judge, dissents and assigns reasons.**

**REVERSED.**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**P. O. Box 52988**
**Shreveport, LA 71135**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Henry Milton Scott**

**Donald Dale Landry**
**Fifteenth Judicial District Attorney**
**Kenneth P. Hebert**
**Assistant District Attorney**
**P. O. Box 3306**
**Lafayette, LA 70502**
**(337) 232-5170**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**GREMILLION, Judge.**

Defendant, Henry Milton Scott, appeals his conviction for attempted monetary instrument abuse, a violation of La.R.S. 14:72.2 and La.R.S. 14:27. We reverse Defendant's conviction and sentence.

## FACTS

On December 10, 2017, Ms. Torrie Ball was working as a cashier at the More for Less convenience store. Defendant brought two beers to the counter. Defendant either handed or placed on the counter a hundred-dollar bill that looked and felt suspicious. Ms. Ball marked the bill with a marker that will color a genuine bill yellow. The mark on this bill turned black. Ms. Ball told Defendant the bill was fake. Defendant then tried to pull smaller bills from his pocket to pay.

As fate would have it, Lafayette Parish Sheriff's Detective Tyler Miller was also in the check-out line at the More for Less. Ms. Ball approached Detective Miller about the bill. Detective Miller examined the bill, which not only appeared and felt fake but also had not one but two black marks on it.

The bill is clearly marked on the front, in two places, "FOR MOTION PICTURE USE ONLY." Immediately below that, the bill advises, "THIS NOTE IS NOT LEGAL. IT IS TO BE USED FOR MOTION PICTURES." Superimposed on Mr. Franklin's image is a small banner that reads, "FOR MOTION PICTURES."

On the back, the bill also notes "MOTION PICTURE USE ONLY" in the space that would normally be captioned "UNITED STATES OF AMERICA." The clock tower of Independence Hall is missing. The words, "IN GOD WE TRUST" are not present. Nowhere does the bill contain the word "dollars." Furthermore, the bill differs markedly in texture from a genuine bill.

1

Detective Miller kept the bill as evidence. He removed Defendant from the store, advised Defendant of his rights, and questioned him. According to Detective Miller, Defendant told him that his employer had paid him that day, and the bill had come from his employer. He also told Detective Miller that he had placed all his money on the counter, and that Ms. Ball had picked up that particular bill. Ms. Ball denied that. Defendant was arrested for monetary instrument abuse and transported to the Lafayette Detention Center.

On May 22, 2018, Defendant was charged by bill of information with monetary instrument abuse, in violation of La.R.S. 14:72.2(A). After pleading not guilty, Defendant proceeded to trial on October 11, 2021. On the same day, the jury found Defendant guilty of the responsive verdict of attempted monetary instrument abuse, in violation of La.R.S. 14:27 and 14:72.2. After the sentencing delays were waived, the trial court sentenced Defendant to eighteen months of imprisonment, with credit given for time served since the date of arrest.

On November 3, 2021, Defendant filed a timely motion for appeal. The order of appeal was granted on November 4, 2021.

Defendant is now before this court alleging one assignment of error:

Whether evidence was insufficient to establish beyond a reasonable doubt that Herbert Milton Scott was guilty of attempted monetary instrument abuse when the "$100 bill" he allegedly used was marked "For Motion Picture Use Only" on the front and back, i.e., it did not purport to be a genuine $100 bill.

**ANALYSIS**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there is one error patent which is rendered moot by our ruling.

2

*Defendant's sole assignment of error*

Defendant asserts that his conviction and sentence must be vacated because the State could not prove all the elements of monetary instrument abuse beyond a reasonable doubt. Defendant argues that under La.R.S. 14:72.2(A) monetary instrument abuse occurs when a defendant "issues, possesses, . . . or otherwise transfers a counterfeit or forged monetary instrument of the United States . . . with intent to deceive another person[.]" Defendant notes that the statute goes on to define counterfeit as "a document or writing that purports to be genuine but is not, because it has been falsely made, manufactured, or composed." La.R.S. 14:72.2(C)(1). Defendant contends that the movie money he used to attempt to buy beer that day was marked "For Motion Picture Use Only" on the front and back, and argues that since it did not purport to be genuine U.S. currency, it was not counterfeit. Defendant asserts there was no evidence that he made or altered any part of the movie money, and since the movie money was not counterfeit, the State could not prove beyond a reasonable doubt that Defendant attempted to commit attempted monetary instrument abuse.

The State argues that Defendant's claim holds no merit because a reasonable jury could find beyond a reasonable doubt that the movie money was a counterfeit. The State notes the issue of whether the bill was a counterfeit was brought up during trial and argued before the jury, and the jury had the opportunity to view and hold the fake bill and found the bill to be counterfeit. The State also notes that Ms. Ball testified that it was difficult to see the words on the bill because the words were mostly the same color, and the bill appeared washed. The State asserts that common sense supports Defendant's conviction because the bill so clearly resembles a genuine bill. The State further argues this court should not substitute its own

3

appreciation of the evidence for that of the fact finder under *State v. Pigford*, 05-477 (La. 2/22/06), 922 So.2d 517, because the jury found that the bill in question satisfied the elements of a counterfeit monetary instrument.

The general analysis for insufficiency of the evidence claims is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The record must show that the State proved all the elements beyond a reasonable doubt. Louisiana Revised Statutes 14:72.2 provides, in pertinent part:

> A.    Whoever makes, issues, possesses, sells, or otherwise transfers a counterfeit or forged monetary instrument of the United States, a state, or a political subdivision thereof, or of an organization, with intent to deceive another person, shall be fined not more than one million dollars but not less than five thousand dollars or imprisoned, with or without hard labor, for not more than ten years but not less than six months, or both.
>
> . . . .
>
> C.    For purposes of this Section:
>
> > (1) "Counterfeit" means a document or writing that purports to be genuine but is not, because it has been falsely made, manufactured, or composed.

4

. . . .
(3) " Monetary instrument" means:

    (a)   A note, stock certificate, treasury stock certificate, bond, treasury bond, debenture, certificate of deposit, interest coupon, warrant, debit or credit instrument, access device or means of electronic fund transfer, United States currency, money order, bank check, teller's check, cashier's check, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, certificate of interest in or participation in any profit-sharing agreement, collateral-trust certificate, pre-organization certificate of subscription, transferable share, investment contract, voting trust certificate, or certificate of interest in tangible or intangible property.

The essential issue in this case is whether the bill Defendant attempted to negotiate at the More for Less was "counterfeit" as defined in La.R.S. 14:72.2(C)(1). That definition requires that the document or writing "purports to be genuine." The instrument that Defendant attempted to transfer to Ms. Ball was marked "*For Motion Picture Use Only*," and was "movie money."

We are guided by some firmly embedded, fundamental precepts of criminal— and, frankly, constitutional— law:

    A cardinal rule basic in our law provides that one cannot be held accountable, or subjected to criminal prosecution, for any act of commission unless and until that act has first been denounced as a crime in a statute that defines the act sought to be denounced with such precision the person sought to be held accountable will know his conduct falls within the purview of the act intended to be prohibited by, and will be subject to the punishment fixed in, the statute. And the courts have not only consistently refused to usurp the prerogatives of the legislature by supplying either the definition or essential elements thereof that have been omitted in the drafting of the statute, but, under rules calling for construction of all criminal and penal statutes as Stricti juris, resolved ambiguities in favor of the accused.

*State v. Christine*, 239 La. 259, 289, 118 So.2d 403, 413-14 (1959). This court may neither supply a definition nor may it disregard a clear definition supplied by the legislature. The definition of "counterfeit" supplied by the legislature requires that

5

the writing or instrument purport to be genuine. The writing in this matter expressly purports to *not* be genuine. The plain language of La.R.S. 14:72.2 forces us to conclude that Defendant's conviction must be overturned because the instrument in question does not meet the definition of "counterfeit." Further, we find that no rational trier of fact could determine that the bill purports to be genuine.

## DISPOSITION

Defendant's conviction is reversed.

**REVERSED.**

STATE OF LOUISIANA

VERSUS

HENRY MILTON SCOTT
A/K/A HENRY J. SCOTT, JR.
A/K/A HENRY SCOTT
A/K/A HENRY J. SCOTT

**ORTEGO, Judge, dissenting with reasons:**

This matter is before us on appeal from the jury verdict finding Defendant guilty of the responsive verdict of attempted monetary instrument abuse, in violation of La.R.S. 14:27 and 14:72.2, and the trial court sentencing Defendant to eighteen months of imprisonment, with credit given for time served since the date of arrest.

The majority votes to reverse the jury's verdict and the trial court's sentence as it finds that the state did not satisfy its evidentiary burden of proving Defendant's conviction, because the bill Defendant possessed and attempted to transfer to purchase his beer was "movie money" and thus does not meet the definition of "counterfeit" pursuant to La.R.S. 14:72.2. I respectfully disagree.

In my view, the record shows that the state provided sufficient evidence as to each essential element, and the jury, as the trier of fact, correctly found Defendant guilty of the responsive verdict of attempted monetary instrument abuse, in violation of La.R.S. 14:27 and 14:72.2.

La.R.S.14:72.2(A) states that monetary instrument abuse occurs where a person "makes, issues, possesses, sells, or otherwise transfers a counterfeit or forged monetary instrument of the United States, a state, or a political subdivision thereof, or of an organization, with intent to deceive another person[.]"

The majority finds, and I concur, that the state has met its burden of proving that defendant did actually "possess" and did actually "transfer" this bill in question.

Defendant argues that the bill that he possessed and attempted to negotiate, and transfer was marked as "movie money," and that as such said bill does not meet the definition or meaning of counterfeit, contained in the language of La.R.S. 14:72.2.

The majority opines that the subject bill in this case is designed as "movie money," and as such reflects it is "not legal."

In the present case, the jury, as the trier of fact, heard all the testimony, looked at the totality of the evidence, and weighted the credibility of the witnesses. At the trial, the clerk, Ball, testified that Defendant went in to purchase two beers and attempted to pay with a hundred-dollar-bill. Ball explained that she had a correction pen which is used to determine if the bill is real or counterfeit. Ball then stated that she marked the bill and it turned black. Ball indicated that the bill also had another black mark on it before she marked it, showing Defendant, or someone else, had attempted to transfer this same fake bill previously. Ball testified that after the bill turned black, she let Defendant know it was a fake, and he tried to pull smaller bills from his pocket to pay her. She also indicated that while she did *not* notice the motion picture print.

Additionally, at the trial, the jury, as triers of fact, where allowed to hold and physically examine Defendant's "movie money" and this bill. After careful consideration, along with the trial court's specific instructions as to the law and the definition of "counterfeit" contained in this statute, the jury found that said bill was in fact counterfeit, and then found Defendant did "attempt" to possess, transfer, and negotiate said counterfeit bill in violation of La. R.S. 14:72.2.

Here, Defendant clearly had the intent to use this fake bill to acquire goods from the convenience store. Defendant attempted to pay with legal currency only after the cashier took the fake bill, marked it, and informed him it was a fake. The evidence shows that Defendant would have paid and transferred this fake bill, had he not been confronted by the cashier. Therefore, and if successful in his purchase, Defendant would have received, in change, $*97.76 **in real legal currency*** in that transaction- not a bad reward and return for a fake $100 bill. Additionally, the evidence and testimony show that upon a quick glance, the bill looks like a real one-hundred-dollar bill, and thus showing Defendant intended to use this fake, "movie money," as real money. This fits squarely within the scope of La.R.S. 14:72.2. Therefore, I believe a reasonable and rational juror could find that Defendant's intention was to transfer this movie money as real money, as the jury found.

As such, I agree with the jury and trial court, and would find that this bill, and "movie money", Defendant possessed and attempted to transfer and negotiate that day, was a counterfeit bill pursuant to La. R.S. 14:72.2. Accordingly, I would affirm the verdict of the jury, and the sentence of the trial court.